# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1788

MOSES RENTI HOLLIDAY, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 18, 2001                    Decided    February 22, 2001    )

*Michael P. Horan*, of Washington, D.C., for the appellant.

*Catherine A. Chase*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

*Richard C. King, Jr.*, with whom *Jeffrey A. Stonerock*, both of Washington, D.C., was on the brief, for the Vietnam Veterans of America as amicus curiae.

*Robert V. Chisholm*, of Providence, Rhode Island, for the National Organization of Veterans' Advocates as amicus curiae.

*Stephen L. Purcell*, of Washington, D.C., was on the brief for the Disabled American Veterans and the Veterans of Foreign Wars of the United States as amici curiae.

*Clark Evans*, of Searcy, Arkansas, was on the brief as amicus curiae.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

KRAMER, *Chief Judge*, filed the opinion of the Court.  STEINBERG, *Judge*, filed a concurring opinion.

KRAMER, *Chief Judge*:  The appellant appealed pro se a September 30, 1999, decision of the Board of Veterans' Appeals (BVA or Board) that denied increased VA disability ratings for his

service-connected sensory impairment and hyperesthesia with trigeminal nerve damage, residuals of a fracture of the left orbital floor, sinusitis, diplopia, and laceration of the left upper eyelid. Record (R.) at 4, 19. On October 12, 2000, the Court, in a single-judge memorandum decision, affirmed the BVA decision. On November 1, 2000, the appellant filed pro se a timely motion for reconsideration or, in the alternative, for a panel decision. *See* U.S. VET. APP. R. 35(a). In a December 1, 2000, order, the Court, in view of recent Congressional enactments (discussed below), withdrew the October 12, 2000, single-judge memorandum decision, granted the appellant's motion for a panel decision, and ordered the parties, and any interested amici curiae, to submit supplemental briefs addressing several enumerated questions. *Holliday v. Gober*, 14 Vet.App. 197 (2000) (per curiam order). The appellant, through counsel, and the Secretary filed supplemental briefs in response to the Court's December 1, 2000, order. In his supplemental brief, the Secretary moved for a full court decision and that motion has been denied by the full Court. The Vietnam Veterans of America (VVA); the National Organization of Veterans Advocates (NOVA); Clark Evans, Esquire; and the Disabled American Veterans, together with Veterans of Foreign Wars of the United States, each filed an amicus curiae brief in response to that order. Oral argument was held on January 18, 2001, at which counsel for the appellant, the Secretary, the VVA, and NOVA presented argument. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the decision of the Board and remand the matter.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from June 7, 1973, to November 23, 1973. R. at 22. On June 23, 1973, he struck his left eye on a shower head and fell to the floor. R. at 25, 43. The injuries that he sustained as a result of that incident led to a referral to a Naval medical board that diagnosed him as having the following: (1) "Orbital Blow-Out Fracture, Left Eye"; (2) "Fibrosis and/or Entrapment of Left Medial Rectus Muscle and Left Inferior Rectus Muscle"; (3) "Partial Obstruction or Dysfunction of the Lacrimal Drainage System, Left Eye"; (4) "Enophthalmos, Left Eye"; and (5) "Laceration, Left Upper Lid." R. at 28. Subsequently, a Naval physical evaluation board determined that he was unfit for military duty due to these

diagnosed conditions. R. at 29. He was permanently retired from active duty in November 1973 (R. at 22, 31) with a Naval retirement disability rating of 30% (R. at 33).

In March 1974, a VA regional office (RO) granted service connection for the following conditions and assigned the following ratings: (1) Double vision ("diplopia") of the left eye (10%); (2) fracture of the left orbital floor (0%); and (3) laceration of the left upper eyelid (0%). R. at 72. In 1996, the appellant sought increased disability ratings for his service-connected conditions (R. at 76), and the RO denied his claims for increased ratings (R. at 102-04). The appellant filed a Notice of Disagreement as to the RO denials. R. at 115. He also amended his claim to include claims for service connection for headaches as a condition secondary to his service-connected injuries and for damage to the left side of his face and for sinusitis. R. at 111. In July 1997, the RO granted service connection for "sensory impairment and hyperesthesia with trigeminal nerve damage" and "sinusitis with headaches, fracture of maxillary sinus," and assigned a 10% disability rating for each condition. R. at 143-46. The appellant appealed to the BVA the denial of increased disability ratings. R. at 196. In the September 1999 Board decision here on appeal, the BVA granted increased disability ratings to 30% for sensory impairment and hyperesthesia with trigeminal nerve damage (R. at 6-9) and 10% for a painful healed injury associated with the postoperative residuals of the left orbital floor fracture (R. at 9-11). The Board determined "that the veteran's claims are well grounded within the meaning of 38 U.S.C. § 5107(a)," as then extant, but denied on the merits increased disability ratings for diplopia, sinusitis with headaches, and a laceration of the left upper eyelid. R. at 4, 19. The appellant appealed that BVA decision to the Court, and the Court, on October 12, 2000, affirmed that decision.

Subsequent to the Court's October 12, 2000, decision, Congress enacted several laws regarding veterans benefits claims. First, on October 30, 2000, the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001, Pub. L. No. 106-398, 114 Stat. 1654, app. § 1611 (Oct. 30, 2000) [hereinafter NDAA § 1611], amended 38 U.S.C. § 5107 to provide "CLARIFICATION OF DEPARTMENT OF VETERANS AFFAIRS DUTY TO ASSIST." That amendment to § 5107(a), inter alia, eliminated the well-grounded-claim requirement. Then, on November 1, 2000, the Veterans Benefits and Health Care Improvement Act of 2000, Pub. L. No.

3

106-419, 114 Stat. 1822 (Nov. 1, 2000), was enacted, with the following coordination provision [hereinafter "coordination provision"]:

> If the Veterans Claims Assistance Act of 2000 is enacted before the provisions of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 are enacted into law, section 1611 of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001, including the amendments made by that section, shall not take effect. If the Veterans Claims Assistance Act of 2000 is enacted after the provisions of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 are enacted into law, then *as of the enactment of the Veterans Claims Assistance Act of 2000*, the amendments made by section 1611 of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 *shall be deemed for all purposes not to have taken effect and that section shall cease to be in effect*.

*Id*. at § 104(c)(2), 114 Stat. at 1828 (emphasis added). Finally, on November 9, 2000, the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) [hereinafter VCAA], was enacted "[t]o amend title 38, United States Code, to reaffirm and clarify the duty of the Secretary of Veterans Affairs to assist claimants for benefits under laws administered by the Secretary, and for other purposes." 146 Cong. Rec. H9912 (daily ed. Oct. 17, 2000) (statement of Rep. Stump); *see* 146 Cong. Rec. S9205 (daily ed. Sept. 25, 2000) (statement of Sen. Brownback for Sen. Specter). The VCAA made a series of amendments to chapter 51 ("CLAIMS, EFFECTIVE DATES, AND PAYMENTS") of title 38, U.S. Code, which, as discussed *infra*, included adding 38 U.S.C. § 5100 to define the term "claimant"; amending 38 U.S.C. § 5103(a) to address the Secretary's duty to notify claimants of required information and evidence; adding 38 U.S.C. § 5103A to address the Secretary's duty to assist claimants; and amending 38 U.S.C. § 5107(a) to eliminate the well-grounded-claim requirement. VCAA §§ 2, 3(a), 4. As to the effective date of the Act, the VCAA provided in section 7(a): "The provisions of section 5107 . . . as amended by section 4 of [the VCAA], apply to any claim . . . filed before the date of the enactment of [the VCAA] and not final as of that date." VCAA § 7(a)(2). With regard to denials of claims for lack of well groundedness that had become final "during the period beginning on July 14, 1999, and ending on the date of the enactment of [the VCAA]," section 7(b) provided that such claims may be readjudicated "under chapter 51 of [title 38], as amended by [the VCAA], as if the denial or dismissal had not been made." VCAA § 7(b)(1), (2). The VCAA did not specify expressly whether other amendments made by the

4

VCAA to chapter 51, including amended section 5103 and new sections 5100 and 5103A, are to be applied retroactively to claims pending on the date of its enactment.

The full texts of NDAA § 1611, the coordination provision, and the VCAA are set forth in the Appendix (Appx.) to this opinion.

## II.  ANALYSIS

### A. Potential Applicability of New Laws

The first question that the Court will address is whether NDAA § 1611 and any provisions of the VCAA potentially may apply to the appellant's claims.  In this regard, we note that the Court has held in *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), that

> where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to [the] appellant should and we so hold will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs to do otherwise and the Secretary did so.

*See also* 38 U.S.C. § 7291(a) (date after which Court decision becomes final); *Taylor v. West*, 11 Vet.App. 206, 207 (1998) (appeal remained "pending" before Court after decision was issued but prior to entry of judgment); U.S. VET. APP. R. 35(d)(1), 36.

### 1. NDAA § 1611

Section 1611 of the NDAA became effective upon its enactment and was enacted before the VCAA.  Therefore, the Court must determine whether NDAA § 1611 has any potential applicability to the appellant's claims.  To do so, we examine the italicized operative language in the last sentence of the coordination provision, as shown in the quote in Part I, *ante*.  "'The starting point in interpreting a statute is its language.'"  *Lee v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 409 (1993)).  The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'"  *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991) (citations omitted), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). Determining the plain meaning of a statute "requires examining the specific language at issue and the overall structure of the statute."  *Gardner*, 1 Vet.App. at 586 (citing *Bethesda Hospital Assn.*

*v. Bowen*, 485 U.S. 399 (1988)); *see also Degmetich v. Brown*, 104 F.3d 1328, 1332 (Fed. Cir. 1997) (when interpreting statutes, court is required to look at context and provisions of law as whole). "'If the intent of Congress is clear, that is the end of the matter'" (*Lee, supra* (quoting *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994))), and there would thus be no need to consider legislative history, the absence of which as to the coordination provision is nonetheless noted.

Although the phrase "as of the enactment" in the coordination provision could be interpreted to make the nullification of NDAA § 1611 effective only after the enactment of the VCAA, thus leaving NDAA § 1611 effective for the nine-day period before the enactment of the VCAA, the language that follows that phrase and that is italicized above ("*shall be deemed for all purposes not to have taken effect and that section shall cease to be in effect*") explicitly precludes such an interpretation. This is so because that italicized language covers both the nine-day period and the period that follows the enactment of the VCAA. The phrase "deemed for all purposes not to have taken effect" can relate only to the period of time beginning on the date of the enactment of NDAA § 1611 and before the enactment of the VCAA (backward looking). The phrase "shall cease to be in effect" can relate only to that period of time beginning on the date of the enactment of the VCAA (forward looking). To interpret both phrases as forward looking would make one of them superfluous, and the Court will therefore not adopt such an interpretation. *See Smith (William) v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (in construing statute, court must strive to give all portions meaning and not read one part in isolation from another). After examining the plain meaning of all the phrases of the coordination provision it is clear that Congress intended that, upon the VCAA's enactment, the amendment to title 38 made by NDAA § 1611 was to be treated for all purposes not ever to have taken effect. *See Gardner* and *Lee*, both *supra*. Therefore, the Court concludes that, as of the date of the VCAA's enactment, NDAA § 1611 has no continuing effect and thus no potential applicability to the appellant's claims.

### 2. 38 U.S.C. § 5107, as amended by the VCAA

In section 7(a) of the VCAA, Congress explicitly provided that "the provisions of section 5107 of title 38, United States Code, as amended by section 4 of [the VCAA], apply to any claim . . . filed before the date of the enactment of [the VCAA] and not final as of that date." VCAA § 7(a)(2); *see Luyster v. Gober*, 14 Vet.App. 186 (2000) (per curiam order). Thus, there can be no

doubt that amended section 5107 applies to the appellant's claims, which were pending on the date of the VCAA's enactment.

### 3. Other provisions of the VCAA

Congress did not, however, explicitly state whether VCAA provisions other than the amendments to section 5107 were to be applied to claims pending on the date of the VCAA's enactment. *See* Appx., *infra*. For the reasons discussed below, the Court concludes that such provisions are potentially applicable retroactively to pending claims.

First, the explicitly stated purpose of the VCAA, without limitation to any category of claimants, including those with pending claims (*see infra* Part II.B., __ Vet.App. at __, slip op. at 12 (discussion of "Third" reason)), is to "reaffirm and clarify the duty of the Secretary of Veterans Affairs to assist claimants." 146 Cong. Rec. H9912 (daily ed. Oct. 17, 2000) (statement of Rep. Stump). To that end, the VCAA, inter alia, amended 38 U.S.C. § 5107, which prior to its amendment had provided in pertinent part:

> (a) Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim.

Under that provision, both this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) had held that the Secretary's duty to assist a claimant was not triggered until a claimant submitted a well-grounded claim. *See Epps v. Gober*, 126 F.3d 1464, 1469 (Fed. Cir. 1997), *aff'g Epps v. Brown*, 9 Vet.App. 341 (1996). As amended by the VCAA, section 5107(a) no longer contains a requirement that a claimant submit a well-grounded claim. VCAA § 4 (amending 38 U.S.C. § 5107(a) to provide: "Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary."). The VCAA also removed the duty-to-assist provision from section 5107 and added to title 38 a new section 5103A, in which the duty to assist is not conditioned upon the submission of a well-grounded claim.

Because VCAA § 7(a) made the amendments to section 5107 explicitly retroactive, any claimant whose claim for title 38 benefits was pending on the date of the VCAA's enactment would be entitled to have that claim readjudicated under new section 5107 if that claim had been denied as not well grounded. *See Luyster, supra.* However, if the VCAA were construed so that *only* the amendments to section 5107 were to be applied to a claim pending on the date of the VCAA's enactment, then upon readjudication of such a claim, the Secretary would have *no statutory duty to assist* because amended section 5107 does not contain a duty-to-assist provision, that provision having been transferred to new section 5103A. Indeed, the revised section 5107 places upon the claimant "the responsibility to present and support a claim." VCAA § 4 (amending 38 U.S.C. § 5107(a)). The Court notes especially that, without the applicability of new section 5103A and the other title 38 sections amended or added by the VCAA (other than section 5107), a readjudication under section 5107 would be an exercise in futility because, although the claim could no longer be denied for a lack of well groundedness, without additional development or notification obligations on the part of the Secretary, it would simply be denied on the merits.

Second, Congress clearly provided that those claims that were denied or dismissed, by VA or a court, "because the claim was not well grounded" and the denial or dismissal of which became final "during the period beginning on July 14, 1999, and ending on the date of the enactment of [the VCAA]," may be "readjudicated *under chapter 51 of* [*title 38*]*, as amended by* [*the VCAA*], as if the denial or dismissal had not been made." VCAA § 7(b)(1), (2) (emphasis added). The italicized language expresses that, as to such finally denied claims, all of the VCAA amendments would apply, not just section 5107. Thus, if the VCAA were to be construed so as to apply only section 5107 to pending claims, a highly incongruous paradox would result in which certain claimants with finally denied claims would be entitled to more favorable treatment than would be claimants with pending claims. Therefore, the conclusion is inescapable that clearly absurd results would obtain unless all provisions of the VCAA are retroactive in their potential applicability. *See United States v. X-Citement Video, Inc.,* 513 U.S. 64, 68-69 (1994) ("Some applications of respondents' position [as to the proper construction of The Protection of Children Against Sexual Exploitation Act] would produce results that were not merely odd, but positively absurd. . . . We do not assume that Congress, in passing laws, intended such results."); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed.

Cir. 1998) ("statutory construction that causes absurd results is to be avoided if at all possible" (citing *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) (reading of statute that "would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and with the legislative purpose")))); *Faust v. West*, 13 Vet.App. 342, 350 (2000) (VA regulation interpreted so as to avoid absurd result); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837 (1990) (in determining whether statute should be applied retroactively, "where the congressional intent is clear, it governs"). *See generally Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("interpretive doubt is to be resolved in the veteran's favor").

Third, as to *Karnas*, *supra*, there can be no question that Congress, which is presumed to be aware of that opinion and its progeny at the time of enacting the VCAA, clearly did not provide the specificity required by *Karnas* to disavow retroactivity. *See generally Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("[w]e generally presume that Congress is knowledgeable about existing law pertinent to legislation it enacts"); *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. So too, where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law . . . ." (citations omitted)).

Therefore, the Court holds that all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment. The Court trusts that the Secretary, in promulgating regulations to implement the VCAA, will reconcile the VCAA regulations with any other currently effective VA issuances. *See Karnas, supra*; *Fugere v. Derwinski*, 1 Vet.App. 103, 106-08 (1990).

### B. Determination of Whether VCAA is Applicable to Appellant's Claims

Because the VCAA was enacted after issuance of the BVA decision here on appeal (and the BVA thus did not have the opportunity to address the VCAA's applicability to the appellant's claims), the preliminary inquiry is whether the Court should decide VCAA applicability in the first instance. In this regard, the Court notes that the appellant essentially requests that the matter be remanded for VA to determine whether his claims fall within the purview of the VCAA's provisions

(Appellant's Brief (Br.) at 12-16), whereas the Secretary urges the Court to decide in the first instance that the appellant's claims do fall within the scope of the VCAA, to determine that the VCAA is more favorable to the appellant than pre-VCAA law (*see Karnas, supra*), and to remand the matter for readjudication under the VCAA's provisions (Secretary's Br. at 12-13, 16-18, 21). For the following reasons, the Court holds that, at least at this time, it may not determine VCAA applicability or inapplicability in the first instance.

First, pursuant to 38 U.S.C. § 511(a), "[t]he Secretary shall *decide all questions of law and fact* necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." (Emphasis added.) Under 38 U.S.C. § 7104(a), "[a]ll questions in a matter which under section 511(a) . . . is subject to decision by the Secretary shall be subject to one *review* on appeal to the Secretary. Final decisions on such appeal shall be made by the Board." (Emphasis added.) This Court "has exclusive jurisdiction *to review* decisions of the Board." 38 U.S.C. § 7252(a) (emphasis added). In reviewing BVA decisions, the Court, in accordance with 38 U.S.C. § 7261, may "hold unlawful and set aside decisions, findings . . . , conclusions, rules, and regulations issued or adopted by the Secretary, the [Board], or the Chairman of the Board," but "[i]n no event shall findings of fact made by the Secretary or the [Board] be subject to trial de novo by the Court." 38 U.S.C. § 7261(a)(3), (c).

Second, two recent decisions of the Federal Circuit (albeit made in the context of the now repealed doctrine of well groundedness) strongly suggest that, under the statutory framework referenced in the preceding paragraph, the Court may not make a de novo legal determination in the first instance where such a conclusion of law, even one involving nonprejudicial error under 38 U.S.C. § 7261(b), would in any way be based on a factual predicate. *Hensley v. West*, 212 F.3d 1255 (Fed. Cir. 2000); *Winters v. Gober*, 219 F.3d 1375 (Fed. Cir. 2000). Specifically, in *Hensley*, the Federal Circuit concluded:

> [B]oth statute and judicial doctrine constrain the appellate review process. . . . Appellate courts can "review" only that which has happened in the past, while the term "de novo" may be understood to mean anew, without reference to what has gone before. To the extent that "de novo" connotes judicial review anew and without reference to what has gone before, the term fails to accurately describe the appellate process, and particularly [this is so] when it is applied to review of issues upon which any measure of deference is accorded to the decision under review.

*Hensley*, 212 F.3d at 1263 (citations omitted). The *Hensley* court then held:

> [Where an] ultimate conclusion is a question of law, but that conclusion rests on factual matters the determination of which by the agency fact-finders is entitled on review to substantial deference[*, s*]*ee, e.g.*, 38 U.S.C. § 7261(a)[,] . . . it is incorrect to describe appellate review of . . . [such a conclusion] as "de novo." . . .
>
> . . . .
>
> The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding. Thus, the Supreme Court has held that when a court of appeals reviews a district court decision, it may remand if it believes the district court failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may *reverse incorrect judgments of law* based on proper factual findings . . . .
>
> . . . [T]he proper course [is] to remand the case to the BVA for further development and *application of the correct law*.

*Hensley*, 212 F.3d. at 1263-64 (emphasis added).

Further, in *Winters*, *supra*, the Federal Circuit noted that, while Mr. Winters' appeal was pending before this Court, there had been a change in law brought about by *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998), which had overruled the test set forth in *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), for determining whether new and material evidence had been presented to reopen a previously and finally disallowed claim. *Winters*, 219 F.3d at 1377. The Federal Circuit reasoned:

> [T]his case presents issues similar to those in the recent decision of this court in *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000). In *Maggitt*, we ordered the Court of Appeals for Veterans Claims to remand to the Board Mr. Maggitt's request to reopen his claim. The Board had analyzed Mr. Maggitt's request to reopen his claim under the *Colvin* standard, and denied the request because this standard was not met. While his appeal to the Court of Appeals for Veterans Claims was pending, this court issued its decision in *Hodge*. Mr. Maggitt requested a remand for the Board to reconsider his request under the new *Hodge* standard, but the Court of Appeals for Veterans Claims refused and instead upheld the Board on the merits. On appeal, we held that, because of the change in the law, the Court of Appeals for Veterans Claims should have granted Mr. Maggitt's request for a remand. *See Maggitt*, 202 F.3d at 1380. A similar analysis applies to the present case, with the same result: the Court of Appeals for Veterans Claims should have remanded Mr. Winters's claim to the Board for reconsideration in light of *Hodge*.

*Winters*, 219 F.3d at 1379. In other words, the *Winters* Court admonished that this Court should have remanded to VA for application of the legal standard set forth in *Hodge* to the factual predicate created by the addition of evidence to the body of evidence present at the time of the previous final denial. Additionally, the Federal Circuit stated in *Winters*:

> There is a further reason why the Court of Appeals for Veterans Claims's action in the present case cannot be affirmed. The reopening statute, 38 U.S.C. § 5108, states that if the veteran presents new and material evidence, "the Secretary shall reopen the claim." Thus, under the statute, only the DVA (acting on behalf of the Secretary) has the authority to reopen a claim. The statute does not give the Court of Appeals for Veterans Claims that power, and the Court of Appeals for Veterans Claims therefore *exceeded its statutory authority* when it assumed Mr. Winters's claim to be reopened in order to make its determination that the reopened claim was not well grounded. . . . *The Court of Appeals for Veterans Claims should not assess whether a claim is well grounded until and unless the DVA rules on the issue* after the claim is properly reopened . . . .

*Winters*, 219 F.3d at 1379-80 (emphasis added) (citations omitted). In *Winters*, the Federal Circuit then held that "[b]ecause the Court of Appeals for Veterans Claims exceeded its statutory authority when it addressed whether Mr. Winters had presented a well[-]grounded claim and prejudiced him by basing its decision on a ground different from that relied on by the Board, the decision must be vacated." *Id*. at 1380.

Third, the Secretary, in his supplemental brief, invited the Court to decide in the first instance that three classes of cases pending before the Court do not fall within the scope of the VCAA's provisions. Secretary's Br. at 13-15. Even assuming that, despite the Federal Circuit doctrine enunciated above, the Court would not be precluded from doing so, at oral argument, the Secretary conceded both that the VCAA potentially applies to all claimants and that any such classifications of nonapplicability would have to be considerably more narrow than had been asserted in his brief. To the extent that the former concession does not swallow the latter concession, as to the latter the Secretary acknowledged that, contrary to his brief, claims for accrued benefits (under 38 U.S.C. § 5121) and of clear and unmistakable error (CUE) (under 38 U.S.C. §§ 5109A, 7111) could not be universally excluded from coverage under the VCAA's notice (38 U.S.C. § 5103) and duty-to-assist (38 U.S.C. § 5103A) provisions.

12

Fourth, pursuant to 38 U.S.C. § 5100, as added by VCAA § 2, a "claimant" includes "any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." The Secretary, at oral argument, as indicated above, recognized that there is no subset of "claimants" to which the Secretary's duties under the VCAA would not be potentially applicable. These duties essentially fall into two categories: Involvement in the collection of evidence that could result in a successful claim (*see* 38 U.S.C. § 5103A) and giving notification to a claimant as to what is required for a claim to be successful (*see* 38 U.S.C. §§ 5102(b), 5103(a)). As to the first category, the Secretary is directed to prescribe regulations, which he has not yet done, to carry out section 5103A, and that in doing so he is expressly authorized by new section 5103A(g), and thus may decide, to provide more assistance than would otherwise be required by law. *See* 38 U.S.C. § 5103A(e), (g).

Fifth, as to the second category, even assuming that the Court could divine in the first instance on the particular facts of a particular case that no amount of additional evidence could change an adverse outcome, the Court could not obviate in the first instance the requirement for the Secretary to provide notice. In this regard, section 5103(a), as amended by the VCAA, now provides:

> Upon receipt of a complete or substantially complete application, the Secretary shall notify the *claimant* and the claimant's representative, if any, of *any information, and any medical or lay evidence*, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a) (emphasis added). The Secretary indicated at oral argument that VA has not yet formulated a clear policy as to what the section 5103(a) notice will contain. In that regard, however, the Secretary did state that, in addition to notifying a claimant of any required evidence and routine administrative information (such as date of birth, Social Security number, address), the notice, at least in some circumstances, may be required to include "information" as to the state of the law on a particular issue. The Secretary suggested, for example, that where a claimant asserts CUE, the section 5103(a) notice might have to include an explanation as to what would be required to state

13

a valid CUE claim under *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993). In addition, the Secretary acknowledged at oral argument that section 5103(a) might require a *continuing* notice obligation during the pendency of a claim, i.e., multiple notices at different stages of the claim rather than just one after the application becomes "complete or substantially complete." 38 U.S.C. § 5103(a). Until the Secretary has addressed these significant uncertainties regarding who gets what kind of a notice and when pursuant to § 5103(a) (it is the Secretary who "has the authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws," 38 U.S.C. § 501(a)), and we have had the opportunity "to review" (38 U.S.C. § 7252(a)) such a policy for its consistency with section 5103(a), the Court has no basis for rendering a decision as to the applicability (or nonapplicability) of that notice provision to the appellant's claims.

Sixth, both the Federal Circuit's and this Court's caselaw require us to ensure compliance with fair process. *See Austin v. Brown*, 6 Vet.App. 547, 551 (1994); *Thurber v. Brown*, 5 Vet.App. 119 (1993) ("entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process"); *see also Hayre v. West*, 188 F.3d 1327, 1333 (Fed. Cir. 1999) (grave procedural error vitiates finality of RO decision); *Sutton v. Brown*, 9 Vet.App. 553, 566 (1996) (discussing and applying VA procedural protections and remanding for "Board to consider and discuss . . . whether the veteran had been given adequate notice of the need to present argument and further evidence on the merits of his claim and an adequate opportunity to appear at a hearing"); *Archbold v. Brown*, 9 Vet.App. 124, 129 (1996) (fundamental right to receive appellate rights and Statement of the Case); *Curry v. Brown*, 7 Vet.App. 59, 66-67 (1994) (discussing and applying VA fair process principles and announcing fair process rules); *Bernard v. Brown*, 4 Vet.App. 384, 392-94 (1993) (holding that VA claimants must be afforded "full benefits of . . . procedural safeguards" afforded by statutory and regulatory provisions establishing "extensive procedural requirements to ensure a claimant's rights to full and fair assistance and adjudication in the VA claims adjudication process"). In this regard, the Federal Circuit stated as an additional rationale for its decision in *Winters*:

This result is also supported by fundamental principles of fairness. . . .

14

Rather than remand Mr. Winters's case to the DVA, the Court of Appeals for Veterans Claims . . . deprived Mr. Winters of his right, under [pre-VCAA] 38 U.S.C. § 5103(a), to an explanation of what evidence was missing from his claim and an opportunity to supply such evidence. Such action by the court is inconsistent with general principles of fairness, and it is particularly unwarranted in view of the fact that "the character of the veterans' benefits statutes is strongly and uniquely pro-claimant."

*Winters*, 219 F.3d at 1379-80; *see Nolen v. Gober*, 222 F.3d 1356, 1361 (Fed. Cir. 2000) (suggesting that failure to provide required notice violates "general principles of fairness, and is particularly unwarranted in view of the fact that 'the character of the veterans' benefits statute is strongly and uniquely pro-claimant'"). These cases strongly suggest that for this Court to render a determination as to VCAA applicability (or nonapplicability) where no section 5103(a) notice has been provided by VA would violate principles of fair process.

## III. CONCLUSION

The Court holds that NDAA § 1611 has no potential applicability to the appellant's claims. The Court further holds that all provisions of the VCAA are potentially applicable to the appellant's claims. We conclude, however, at least at this time, that this Court may not determine in the first instance the specific applicability of the VCAA. Because of this Court's scope of review, the Federal Circuit jurisprudence interpreting that statutory framework, the Secretary's acknowledgments at oral argument, the "strongly and uniquely pro-claimant" nature of veterans law, the absence of VA implementing regulations, and the concerns of fundamental fairness and fair process, the Court must avoid cutting off an appellant's rights under the VCAA by prematurely injecting itself into the VA adjudication process and making determinations on issues that were not addressed by VA in the first instance. Moreover, we stress that our concern about not acting precipitously is particularly acute here, where the enactment of the VCAA--which could be the most far-reaching Congressional enactment regarding claims adjudication since the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988) (which created this Court)--came about largely because Congress perceived that judicial decisions had far too narrowly defined the Secretary's authority to provide assistance (*see* Explanatory Statement of Committees on Veterans' Affairs (Background), 146 Cong. Rec. H9913 (daily ed. Oct. 17, 2000)), and where the Court, by rendering any decision as to the

applicability of that law to the appellant's claims, would risk abridging (or even usurping) the Secretary's statutory authority to implement that law and to render such decisions under it as the Secretary considers appropriate. *See* 38 U.S.C. §§ 501(a) , 511(a); *see also McKart v. United States*, 395 U.S. 185, 193-94 (1969) ("The agency, like a trial court, is created for the purpose of applying a statute in the first instance."). Indeed, for this Court to determine in the first instance who's in and who's out under the enormously far-reaching adjudication safeguards enacted in the VCAA would be to act not as a reviewing judicial tribunal but as an executive agency that is promulgating regulations. This we cannot do. Rather, we will vacate the BVA decision and remand for VA to make a determination as to the applicability of the various VCAA provisions to the appellant's claims.

Upon consideration of the above, the September 30, 1999, BVA decision is VACATED and the matter is REMANDED for proceedings consistent with this opinion.

STEINBERG, *Judge*, concurring: I join fully in Chief Judge Kramer's excellent opinion. I wish to amplify several points, however.

First, although I agree with the conclusion in part II.A.1. of the Court's opinion, I wish to add the following analysis regarding the defeasance of the ephemeral amendment to 38 U.S.C. § 5107 made by the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001, Pub. L. No. 106-398, 114 Stat. 1654, app. § 1611 (Oct. 30, 2000) [hereinafter NDAA § 1611], as a result of the enactment of the coordination provision in the Veterans Benefits and Health Care Improvement Act of 2000, Pub. L. No. 106-419, § 104(c)(2), 114 Stat. 1822, 1828 (Nov. 1, 2000) [hereinafter coordination provision], and the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) [hereinafter VCAA], all three of which laws were enacted to overturn this Court's opinion in *Morton v. West*, 12 Vet.App. 477 (finding certain Department of Veterans Affairs (VA) issuances not binding on VA), *en banc review denied*, 13 Vet.App. 205 (1999) (per curiam order), *vacated and remanded sub nom. Morton v. Gober*, __ F.3d 2000 __, No. 99-7191, 2000 WL 1229051 (Fed. Cir. Aug. 17, 2000) (table), *opinion withdrawn and appeal dismissed*, 14 Vet.App. 174 (2000) (per curiam order).

16

The Court's reading of the language in the effective-date coordination provision is buttressed by similar legislative action by Congress in 1998 in connection with the enactment of 38 U.S.C. § 1103, relating to claims based upon the effects of tobacco products. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 9014, 112 Stat. 685, 865-66 (July 22, 1998). The new section 1103 was made effective prospectively, that is, with respect to claims received by VA after the date of that enactment. *Id*., 112 Stat. at 866 (subsection (b) of new section 8202). Approximately six weeks earlier, Congress had amended 38 U.S.C. §§ 1110 and 1131, dealing somewhat differently with the same subject matter; those amendments were to be effective with respect to any claim for compensation received by VA *at any time* (except not in a case in which VA had before that enactment awarded service connection based on use of tobacco products). Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, § 8202, 112 Stat. 107, 492-93 (June 9, 1998). In the later enactment, Congress provided that the "amendments made by [the earlier enactment] shall be treated for all purposes as not having been made". Pub. L. No. 105-206, § 9014(a), 112 Stat. at 865. That rather straightforward and brief coordinating provision effectively nullified the earlier enactment from its very outset.

In contrast, the situation we confront regarding the competing amendments to 38 U.S.C. § 5107 is far more complicated as a result of the fact that Congress elected to place the nullification language (coordination provision) in a law (Pub. L. No. 106-419) that was enacted between the date of enactment of the provision to be nullified (NDAA § 1611) and an anticipated future date of enactment of the superseding provision (VCAA § 4). In order to achieve exactly the same effect as was achieved in the case of the tobacco-products provisions -- nullification of the first enactment *from its inception* -- more complicated nullification legislation had to be crafted because not only were there three separate laws involved but also because the provision regarding the effective date of the nullification of NDAA § 1611 was enacted before the superseding provision itself (in the VCAA) and, hence, before any nullification could actually occur. The extra phrases used in the coordination provision, "as of the enactment" and "shall cease to be in effect", were necessary because of the nine-day period between the enactment of NDAA § 1611 and the VCAA's enactment date, no matter that the former was later to be retrospectively nullified by operation of the coordination provision as of the date that the VCAA was enacted. Unlike in the current situation,

the tobacco-products nullifying provision was enacted in the same law as the coordinating provision, so there was no time gap and, thus, no provision was necessary as to "shall cease to be in effect" in order to preclude even the slightest possibility of any residual effect; nor was there any need to provide language to specify operative force "as of" a specific date. In our situation, any VA adjudicative action taken during the nine days during which NDAA § 1611's amended version of section 5107 was in effect would, as a theoretical matter, have had to have been taken in the context of section 5107 as it had at that point been amended by NDAA § 1611; however, the phrase "shall cease to have effect" in the coordination provision makes absolutely clear that Congress intended (notwithstanding the absence of any legislative history to that effect) to preclude any remedy after the VCAA's enactment for any adjudicative failure to have taken into account the nine-day version of section 5107.

Second, I wish to expand somewhat on the Court's cautionary statement at the end of part II.A.3. of the opinion regarding the need for the VCAA regulations to be reconciled with any currently effective VA issuances. Because the VCAA is potentially applicable to pending claims, VA will be required to determine, under *Karnas v. Derwinski*, in each case whether any regulations that it issues to implement the VCAA provide a more favorable result to a claimant than would have been provided under the law (including binding VA issuances) that existed prior to the VCAA, unless VA can demonstrate clearly that as a general matter the VCAA and its subsequent implementing regulations provide a more favorable result in all instances. *Karnas*, 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"). In this regard, I note (without expressing an opinion as to the merits of) the appellant's position that substantive rights were created by virtue of two "Fast Letters" (Fast Letter, 00-92 (Dec. 13, 2000); Fast Letter 00-87 (Nov. 17, 2000)) issued, subsequent to the VCAA, by the Director of Compensation and Pension in the VA Veterans Benefits Administration to provide VCAA guidance (and that were not subject to notice or comment, *see Fugere v. Derwinski*, 1 Vet.App. 103, 106-08 (1990) (discussing applicability of Administrative Procedure Act, 5 U.S.C. § 551 et seq., to VA)). If the appellant is correct, then a VA adjudication made in

18

accordance with those VCAA-implementing regulations could provide a less favorable result to a claimant than would have been provided by an adjudication in accordance with such preexisting substantive requirements in the Fast Letters. Such a result is also possible as to VA issuances that predate the VCAA, should a VA adjudication under the implementing regulations provide a result less favorable than would have been provided under those pre-VCAA issuances. *See*, *e.g.*, *McCormick v. Gober*, 14 Vet.App. 39 (2000) (holding that VBA Letter 20-99-60 was binding VA issuance although not adopted after notice and opportunity for public comment); *Morton*, *supra* (as to withdrawal of opinion); *Patton v. West*, 12 Vet.App. 272, 277-84 (1999) (holding certain parts of VA Adjudication Procedure Manual, M21-1, were binding on VA); *Cohen (Douglas) v. Brown*, 10 Vet.App. 128, 139 (1997) (same). In this regard, I note the recognition by the Secretary's representative at oral argument that pre-VCAA duties should be contained in the VCAA implementing regulations.

Finally, I note that, although the appellant has requested a remand under the VCAA, thereby specifically invoking any rights that he may have under the VCAA, the question of waiver of VCAA rights may arise before VA in the adjudication process there following our remand of the case. *Cf.* 38 C.F.R. § 20.1304(c) (2000) (expressly permitting claimant to waive remand from BVA to RO for issuance of Supplemental Statement of the Case when additional pertinent evidence is submitted by claimant); *Sutton v. Brown*, 9 Vet.App. 553, 567-69 (1996).