# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-1785

Everett B. Jeffcoat, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided    April 22, 2003   )

*Michael P. Toomey*, of Sunbury, Pennsylvania, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy, Jr.*, Acting Deputy Assistant General Counsel; and *Gary E. O'Connor*, all of Washington, D.C., were on pleadings for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

STEINBERG, *Judge*:   The appellant, Everett B. Jeffcoat, through counsel, seeks review of an August 2000 Board of Veterans' Appeals (Board or BVA) decision that denied his April 1993 claim for reimbursement from the Department of Veterans Affairs (VA) of the cost of medical services that he received from a non-VA source. Record (R.) at 1-5. Before the appellant obtained representation, he filed an informal brief and the Secretary filed a motion for remand for readjudication in light of the enactment of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), and the Court's opinion in *Holliday v. Principi*, 14 Vet.App. 280 (2001), *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order). In response, the appellant filed an informal reply brief. Pursuant to a September 2001 Court order, *Jeffcoat v. Principi*, No. 00-1785, 2001 WL 1167238 (Vet. App. Sept. 18, 2001), the Secretary filed a response to the appellant's informal reply brief and withdrew his motion for a VCAA remand. After the appellant obtained

representation in April 2002, he filed, through counsel, a supplemental brief and supplemental reply brief, and the Secretary filed a supplemental brief. For the reasons set forth below, the Court will vacate the Board decision and remand the matter for readjudication.

## I. Relevant Background

The veteran served on active duty in the U.S. Army from April 1967 to April 1969, including service in Vietnam, and was honorably discharged. R. at 2, 34. He is service connected by VA for post-traumatic stress disorder, rated 100% disabling, and for a skin condition, rated noncompensable. R. at 36, 86. In January 1993, the veteran requested the assistance of a patient representative at the William Jennings Bryan Dorn VA Medical Center (Dorn VAMC) to help him obtain VA authorization for fee-basis treatment and analysis of a growth on his right arm. R. at 9-10. He met with Ms. Glenda Gissendanner, a Dorn VAMC patient representative, who filed a "Patient Concern Form" memorandum that related that the veteran had told her that he wanted the growth removed and analyzed outside of the VA facility because of "his paranoia about [the] treatment [at the Dorn VAMC]." R. at 9. In her memorandum, Ms. Gissendanner stated:

> While I recognize that the services Mr. Jeffcoat requests are available in[-]house, when we have attempted in the past to bring his care back to our facility, these efforts have not proven to be effective. . . . If funds are available, I believe that it would be in the best interest of the hospital and the patient to approve the above tests on a fee basis.

R. at 10. In early February 1993, the Dorn VAMC issued an authorization form for the requested outpatient treatment (R. at 13); the veteran was notified by letter dated February 22, 1993, that he had been granted "short[-]term authorization for excisional biopsy of arm" (R. at 15). The authorization form stated, in relevant part:

> Acceptance of this request to render the prescribed services will constitute an agreement which is subject to the following:
>
> I. SERVICES. If services are not initiated, please return this document to the [Dorn VAMC] with a brief explanation. Unless approved by . . . VA, services are limited in type and extent to those shown.
>
> . . . .

2

VI.  PAYMENT.  Payment by . . . VA for services rendered
and approved is payment in full.

R. at 13.

The veteran was initially seen regarding this matter on March 4, 1993, at the office of a private physician, Dr. Metropol.  R. at 26.  On a "Patient Information" form, he listed his reason for the visit:  "Remove growth from right forearm and send to Triangle Laboratories, Durham, N.C. [hereinafter "Triangle"], for Agent Orange analysis"; he also listed his insurance information: "Payment authorized by Dorn [VAMC]."  *Ibid.*  Medical notes from Dr. Metropol's office reported that the "lesion" was removed from the veteran's forearm on March 10, 1993, and that there was a subsequent followup examination.  R. at 27.  Sometime thereafter, Dr. Metropol sent the specimen to Triangle for an Agent-Orange-related contamination test, called a tetrachlorodibenzo-p-dioxin (TCDD) test.  *See* R. at 19, 21 (the date of this submission is not clear in the record on appeal (ROA)).

On March 17, 1993, the veteran met again with patient representative Gissendanner, as well as with Ms. Karen Ford, Chief of the Fee Basis Section, and Dr. Gary Peterson, Chief of the Ambulatory Care Section, both of the Dorn VAMC.  R. at 17, 19, 24.  Ms. Gissendanner noted:

Today, Mr. Jeffcoat is upset because fee services has disapproved a TCDD[] test on the growth which was removed. . . .

. . . The laboratory subsequently called Mr. Jeffcoat about payment for the test.  He told them to contact Fee Basis at this hospital, which they did.  The test, which costs $1300.00, had not been approved – only the excision was approved.  This information was presented to Dr. Goldstein and he denied authorization for the test.  The laboratory has been so informed.

R. at 19.  Ms. Gissendanner also contacted the VA Agent Orange Project Office at VA Central Office in Washington, D.C., regarding the veteran's concerns and stated:

Mr. Rosewall [of VA's Environmental Medicine Office] advised that . . . VA is not offering this type [of] test for any veteran at this point in time.  It has been done on some people, not by . . . VA, but elsewhere for research purposes.  It is not considered for diagnostic or treatment purposes to be offered by . . . VA.

. . . .

> He stated that there is a VA Manual which establishes that this test will not be done. This is M-10, Part I, Paragraph 2.07 – note at the end of the paragraph, which reads:
>
>> "NOTE: VA medical centers are not equipped to analyze relationships between TCDD levels in blood serum and/or adipose tissue and Vietnam veterans' exposure to Agent Orange. Surgical procedures will not be performed to obtain blood or tissue for the purpose of TCDD analysis."
>
> Mr. Rosewall indicated that he felt we were on firm ground in denying payment for this test.

R. at 17. The veteran's claims representative sent a March 23, 1993, letter to the Dorn VAMC requesting payment for the TCDD test (R. at 21-22); in response, the Dorn VAMC, acting as the VA agency of original jurisdiction, sent a March 29, 1993, letter to the veteran's claims representative that denied that request: "[T]his was not an approved procedure, and VA was not able to authorize or pay for this test. This test was not ordered by a VA physician and was requested sole[l]y by Mr. Jeffcoat." R. at 24. The record reflects that on April 8, 1993, the veteran paid Triangle in full ($1300.00) for the TCDD test. R. at 92, 94, 103.

In April 1993, the veteran's claims representative submitted to the Dorn VAMC a Notice of Disagreement regarding the Dorn VAMC March 1993 decision. R. at 29. In September 1993, the veteran and his claims representative and VA treating psychologist testified under oath before a Dorn VAMC hearing panel. R. at 44-51. The veteran stated that he believed when he had first visited Dr. Metropol that VA had agreed to pay for the excision of the right-arm growth and all tests attendant to the excision (R. at 47), and that he did not learn that VA had disallowed his fee-basis claim for the Agent Orange testing until his meetings with the Dorn VAMC representatives on March 17 and 18, 1993 (R. at 49). The VA psychologist testified that the veteran's fears concerning Agent Orange exposure had become an "almost an obsessional" driving force in his life and that the TCDD test was "an important step" in alleviating his fears. R. at 50.

4

In October 1996 and again in September 1997, the Board remanded this matter to the Dorn VAMC for additional development. R. at 73-77. The Board directed, inter alia, that the following actions occur on remand:

> 3. [Dorn VAMC] should obtain all pertinent documentation to support its position that the testing in question was not authorized by VA. This should include an affidavit or statement from Dr. Metropol, or any other person from his office. This should indicate the type of procedure that was performed by Dr. Metropol's office, and, what if anything, Dr. Metropol did tell the veteran regarding the testing of the growth that had been removed. It should be requested that Dr. Metropol indicate whether he or his office ordered or authorized any further tests and, if so, under whose authority. [Dorn VAMC] should also obtain appropriate records in order to document action taken by VA personnel in this regard.

R. at 76.

Subsequently, in September 1998, the Dorn VAMC prepared a memorandum discussing a telephone call with Dr. Metropol's office; the memorandum stated in pertinent part:

> The office manager made a full review of Mr. Jeffcoat's records and revealed [that] the sole reason Mr. Jeffcoat came to Dr. Metropol was to have a specimen sent for TCDD testing at Triangle Laboratories. This is indicated on the Patient Information Form [that] Mr. Jeffcoat filled out in Dr. Metropol's office on March 4, 1993. Documentation from Triangle Laboratories indicates [that] VA personnel telephoned on March 17, 1993[,] to inform [Triangle] that VA did not authorize TCDD testing to be performed, only a standard biopsy. Triangle Laboratories relayed this information to the veteran and he elected to pay for the testing on his own and sent a check for $1300.00.

R. at 130. In October 1998, the Board, at the request of the veteran's representative, again remanded the matter to the Dorn VAMC to afford him an opportunity to prepare a VA Form 646 ("Statement of Accredited Representation in Appealed Case"). R. at 135-137.

In the August 2000 BVA decision here on appeal, the Board denied reimbursement of the cost of unauthorized medical services provided by Triangle in April 1993. R. at 1-5. The Board first determined that the TCDD test was not authorized by VA. R. at 4. The Board then concluded that, under 38 U.S.C. § 1728 ("Reimbursement of certain medical expenses") and 38 C.F.R. § 17.120

5

("Payment or reimbursement of the expenses of . . . medical services not previously authorized"), reimbursement for the TCDD test was not permissible because a medical emergency had not existed at the time of the testing, which is one of three statutory requirements that must be fulfilled before VA reimbursement may be granted. R. at 4-5.

## II. Contentions of the Parties

In February 2001, before he obtained representation, the appellant filed an informal brief; he argues, inter alia, that the Board decision should be reversed and that he should be reimbursed for the cost of the "'authorized' medical services" provided by Triangle because of the following: (1) The Board failed to apply to his claim the Veterans' Health Care Eligibility Reform Act of 1996, Pub. L. No. 104-262, 110 Stat. 3177 (Oct. 9, 1996) (codified, in part, as amended at 38 U.S.C. § 1710), which, he asserts, requires VA to furnish hospital care and medical services to veterans exposed to herbicides in Vietnam, and (2) the Dorn VAMC failed to comply with remand instruction number three in the Board's September 1997 decision. Informal Brief (Br.) at 2-5. In May 2001, the Secretary filed a motion for remand for readjudication in light of the enactment of the VCAA and the Court's opinion in *Holliday, supra*. Motion (Mot.) at 1-5. The appellant filed a reply in opposition to the Secretary's motion and reiterates his request for reversal. Informal Reply Br. at 1-2. Because the Secretary, in his motion, did not directly address the appellant's arguments, *see* Mot. at 1-5, the Court ordered the Secretary to file a response. *Jeffcoat*, *supra*.

In his December 2001 response, the Secretary argues that (1) the evidence of record supports the Board's conclusion that the TCDD test was not authorized by VA (Response (Resp.) at 8-10); (2) 38 U.S.C. § 1703 does not provide for reimbursement to be paid to a veteran who pays for services himself (Resp. at 10); (3) the veteran may not prevail as a third-party beneficiary to a section 1703 contract between VA and Triangle because the TCDD test exceeded the scope of the contract (Resp. at 10-14); (4) the Dorn VAMC fully complied with the September 1997 Board remand instruction number three by speaking to a representative at Dr. Metropol's office (Resp. at 14-15); and (5) 38 U.S.C. § 1710 is inapplicable to the appellant's claim because that provision establishes eligibility for medical care in a VA facility and Triangle is a non-VA facility (Resp. at 15-16). The Secretary also withdrew his May 2001 motion for a VCAA remand.

6

The appellant obtained attorney representation in April 2002, and this appeal was subsequently submitted to a panel for decision without oral argument. In October 2002, the appellant, through counsel, filed a supplemental brief; he argues that (1) the Board failed to discuss the "reasonably raised issue of whether [the appellant] was entitled to reimbursement of the costs of medical expenses as a third-party beneficiary to a fee-basis contract entered into by [VA] and Dr. Metropol, a private physician" (Supplemental (Suppl.) Br. at 4-10); and (2) the Board failed to provide an adequate statement of reasons or bases for its determination that the appellant's TCDD testing was not authorized by VA (Suppl. Br. at 10-13). The Secretary filed a supplemental brief and argues that (1) "it is unclear whether this Court would have jurisdiction" under the Little Tucker Act, 28 U.S.C. § 1491 (a)(1), to consider a contract claim (Suppl. Br. at 6-7); (2) "it is unclear whether the contract-law doctrine of third-party beneficiaries applies to claims for reimbursement of private medical expenses" (Suppl. Br. at 7-11); (3) the contract between VA and Dr. Metropol's office did not provide that VA would pay for any procedure other than an "excisional biopsy", and the medical definition of the term "excisional biopsy" does not necessarily include a TCDD test (Suppl. Br. at 11-19); (4) the appellant's reliance on VA to pay for the TCDD testing based on the contract between VA and Dr. Metropol's office was not justifiable or reasonable (Suppl. Br. at 20-22); and (5) the appellant's argument that the Board failed to discuss whether the TCDD test was authorized is without merit because the Board plausibly decided that issue against him as a finding of fact (Suppl. Br. at 22-23).

The appellant filed a reply brief; he reiterates his previous arguments and also asserts that (1) the Secretary did not address the issue whether the appellant, a third-party beneficiary, may be entitled to reimbursement of costs for medical services under section 1703 (Reply Br. at 1-2); and (2) the term "excisional biopsy" is an ambiguous term in the contract between VA and Dr. Metropol's office (Reply Br. at 3-5).

## III. Analysis

### A. Inadequate Reasons or Bases

The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*,

1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

The appellant contends correctly that the Board failed to provide an adequate statement of reasons or bases for its determination that the appellant's TCDD testing was not authorized by VA. Suppl. Br. at 10-13. The Board stated merely:

> The Board first finds that the TCDD testing conducted by Triangle Laboratories was not authorized by VA. The contemporaneous evidence clearly establishes that Triangle Laboratories communicated with VA and was informed that VA would not pay for the TCDD testing. The evidence shows that the veteran was advised of this by both Triangle Laboratories and VA and that he chose to pay for the testing.

R. at 4. The Court finds this statement to be inadequate and insufficient to provide for effective judicial review; the Board omitted any discussion of relevant documents in the record, such as, but not limited to, reference to the authorization form for outpatient treatment (R. at 13) and the two memoranda from Dorn VAMC patient representative Gissendanner discussing her meetings with the veteran (R. at 10, 17, 19). The issue whether the TCDD testing was authorized by VA is pivotal in the case. Accordingly, the Court will vacate the BVA decision and remand this matter for readjudication. On remand, the Board must provide a thorough discussion so as to enable the appellant to understand the precise basis for the Board's decision and to facilitate review in this Court if sought again. *See Caluza*, *Gabrielson*, and *Gilbert*, all *supra*.

8

### B. Stegall v. West *Error*

The Court held in *Stegall v. West* that a Court or Board remand "confers on the veteran or other claimant, as a matter of law, the right to compliance with remand orders" and "imposes upon [VA] a concomitant duty to ensure compliance with the terms of the remand." *Stegall v. West*, 11 Vet.App. 268, 271 (1998). The appellant argues, and the Court agrees, that VA failed to comply with remand instruction number three in the Board's September 1997 decision. Informal Br. at 2-5. That instruction provided, in pertinent part, that VA should obtain an affidavit or statement from Dr. Metropol's office indicating:

> [T]he type of procedure that was performed by Dr. Metropol's office, and, what if anything, Dr. Metropol did tell the veteran regarding the testing of the growth that had been removed. It should be requested that Dr. Metropol indicate whether he or his office ordered or authorized any further tests and, if so, under whose authority.

R. at 76. The September 1998 statement that VA obtained from a representative at Dr. Metropol's office reflects that the appellant and Triangle apparently knew that VA would not pay for the test: "Documentation from Triangle Laboratories indicates [that] VA personnel telephoned on March 17, 1993[,] to inform them that VA did not authorize TCDD testing to be performed, only a standard biopsy. Triangle Laboratories relayed this information to the veteran and he elected to pay for the testing on his own." R. at 130. This statement, however, does not address fully what Dr. Metropol's office perceived to be the scope of its authority from VA to conduct the biopsy and to send it for TCDD testing and what Dr. Metropol told the veteran about the testing of the growth. *Ibid*. Accordingly, a remand is also required pursuant to *Stegall*.

On remand, should the Board determine that the evidence was at least in equipoise that the TCDD test was authorized, *see* 38 U.S.C. § 5107(b), the Board must then provide an analysis under 38 U.S.C. § 1703 as to whether a claimant may be reimbursed as a third-party beneficiary to a contract between VA and a private medical provider for authorized VA services.

### C. Other Arguments

The Court has considered the appellant's other arguments and does not find that they warrant further review at this time, in view of the factual development that may occur in the readjudication that will be ordered on remand. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order)

9

(establishing that because of yet unknown factual and legal context in which claim readjudication will occur, absent "appropriate circumstances", Court will often exercise its discretion not to address each asserted BVA error once it is determined that VCAA remand is warranted; narrow decision preserves opportunity to argue claimed errors before Board at readjudication and before Court on appeal should Board rule adversely). The appellant is, of course, free to pursue these matters on remand. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (noting that "[t]he Court expects that the BVA will reexamine the evidence of record, seek any other evidence [that] the Board feels is necessary, and issue a timely, well-supported decision in this case").

## IV. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates the August 4, 2000, BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1703, 5107, 7104(a), (d)(1); 38 U.S.C. §§ 5100-5106, as amended by the VCAA; 38 C.F.R. § 3.159 (2002); 66 Fed. Reg. 45,620 (Aug. 29, 2001); *Fletcher, supra* – all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday*, 7 Vet.App. at 533-34. The VCAA and its implementing regulations will apply on remand, *see* 66 Fed. Reg. at 45,620 (amended provisions applicable to original claims "not decided by VA as of" November 9, 2000). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky, supra*, and such evidence and argument must be considered if submitted on remand. *See Kay v. Principi,* 16 Vet.App. 529, 534 (2002). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance

with those terms. *See Stegall*, *supra*. A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

       VACATED AND REMANDED.