Shirley D. WILLIAMS, Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Appellee.

No. 98–1491.

United States Court of Appeals for Veterans Claims.

Argued Aug. 28, 2000.

Decided Aug. 31, 2001.

Roger W. Rutherford, of Norton, VA, for the appellant.

Kathy A. Banfield, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Carolyn F. Washington, Deputy Assistant General Counsel, all of Washington, DC, were on the pleadings, for the appellee.

Bart F. Stichman and Sharra E. Greer, both of Washington, DC, were on the pleadings for the National Veterans Legal Services Program as amicus curiae.

Before KRAMER, Chief Judge, and FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

KRAMER, Chief Judge, filed the opinion of the Court. KRAMER, Chief Judge, with whom STEINBERG, Judge, joined, filed a separate statement. IVERS, Judges, with whom FARLEY, Judge, joined, filed a dissenting opinion.

KRAMER, Chief Judge:

The appellant, Shirley D. Williams, appeals an April 28, 1998, decision of the Board of Veterans' Appeals (Board or BVA) determining that the appellant was not entitled to an effective date prior to October 20, 1989, for the award of dependency and indemnity compensation (DIC). Record (R.) at 9, 19. The appellant and the Secretary have filed briefs, and the National Veterans Legal Services Program has submitted an amicus curiae pleading suggesting that the Court defer action until the appellant has exhausted her judicial remedies before the United States District Court for the Northern District of California [hereinafter the District Court]. Oral argument was held on August 28, 2000. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the decision of the Board.

## I. BACKGROUND

The veteran, James B. Williams, served on active duty in the U.S. Army from January 1968 to December 1969, including service in Vietnam. R. at 9. On June 28, 1979, the veteran died as the result of a carcinoma of the lung. R. at 15. In August 1979, the appellant, his surviving spouse, filed an application for DIC, contending that the veteran's fatal lung cancer had resulted from his military service. R. at 17–20. A Department of Veterans Affairs (VA) regional office (RO), in November 1979, denied the appellant's claim (R. at 48), and the appellant timely appealed that decision (R. at 51, 74). In support of her appeal, the appellant's representative asserted that the veteran's lung cancer had been caused by exposure to herbicides while he was serving in Vietnam. R. at 76–77. The Board, in an October 1980 BVA decision, denied her claim, finding that the veteran's lung cancer did not develop in service or within a presumption period, that it was not a result of Agent Orange exposure, and that it was not caus-

ally related to any service-connected disability. R. at 87–88.

In October 1984, Congress enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. 98–542, §§ 5–6, 98 Stat. 2725, 2727 (1984) (Dioxin Act), which required VA to prescribe regulations that "establish[ed] guidelines and (where appropriate) standards and criteria for resolution of claims ... based on a veteran's exposure during service ... in the Republic of Vietnam during the Vietnam era to a herbicide containing dioxin." In order to establish such guidelines, an advisory committee, to be composed of experts in dioxin, experts in epidemiology, and interested members of the public, was required to provide recommendations regarding diseases that should be deemed to have a connection to exposure to dioxin. The Secretary, taking those recommendations into consideration, was then required to prescribe regulations setting forth the circumstances under which service connection would be granted for diseases found, based on "sound scientific or medical evidence," to have a connection to exposure to herbicides containing dioxin.

Prior to the promulgation of any such regulations, the appellant, in June 1985, submitted to the RO another application for DIC, asserting that the veteran's death was due to Agent Orange exposure. R. at 96. Later that month, after receiving information from the Department of the Army regarding the use of herbicides in Vietnam (R. at 100–22), the RO confirmed the prior denial of the appellant's DIC claim. R. at 124.

Subsequently, under the authority of the Dioxin Act, VA promulgated a final regulation (since replaced), 38 C.F.R. § 3.311a, effective September 25, 1985, which had provided presumptive service connection for chloracne for veterans exposed during service in Vietnam to herbicides containing dioxin if the condition developed during a specified period. 50 Fed.Reg. 34, 458 (1985). That regulation had also specified that sound scientific and medical evidence had not established a cause-and-effect relationship between dioxin exposure and any disease other than chloracne. 38 C.F.R. § 3.311a(d) (1986).

In February 1987, Vietnam veterans and survivors of veterans filed a class action suit in the District Court against the Veterans' Administration (now the Department of Veterans Affairs), alleging that 38 C.F.R. § 3.311a violated provisions of the Dioxin Act because the scientific standard used in determining whether claimed diseases were related to Agent Orange exposure was too restrictive. *See Nehmer v. United States Veterans' Administration,* 712 F.Supp. 1404, 1408–10 (N.D.Cal.1989) (*Nehmer I* ). As a preliminary matter, the District Court, in December 1987, issued an order granting the plaintiffs' motion for class certification. *Nehmer v. United States Veterans' Administration,* 118 F.R.D. 113 (N.D.Cal.1987). In that order, the District Court noted that, in opposition to the plaintiffs' motion, the defendant had argued that some of the named plaintiffs had never submitted a claim under the challenged regulation; rather, their claims had been denied prior to the promulgation of § 3.311a. *Id.* at 117. In response to that argument, the District Court noted that the plaintiffs were claiming "that the 1985 regulation, and the procedures used to enact it, violate[d] the Dioxin Act" and that the "[p]laintiffs denied benefits prior to the regulation's enactment lack standing to pose that legal challenge to their denial." *Id.* Nevertheless, the District Court held that, because the "pre 1985 claimants share a threat of future harm with other class members," the plaintiffs had satisfied

the requirement that class members share common questions of law and fact. *Id.*

As to the merits of the plaintiffs' claim, the District Court, in May 1989, issued a decision agreeing with the plaintiffs that the portion of the regulation that specified that there was no cause-and-effect relation between dioxin exposure and diseases other than chloracne was contrary to the Dioxin Act. *Nehmer I,* 712 F.Supp. at 1409; *see also* 38 C.F.R. § 3.311a(d) (1986). Accordingly, the District Court held that 38 C.F.R. § 3.311a(d) was invalid and "void[ed] all benefit decisions made under [38 C.F.R. § 3.311a(d) ]." *Nehmer I,* 712 F.Supp. at 1409.

In order to resolve remedial issues implicated by *Nehmer I,* the parties subsequently entered into a final stipulation and order [hereinafter the *Nehmer* Stipulation], which was incorporated into the District Court's final judgment. *See Nehmer v. United States Veterans' Administration (Nehmer II ),* 32 F.Supp.2d 1175, 1176 (N.D.Cal.1999). The *Nehmer* Stipulation provided that, if VA issued new regulations regarding herbicide—exposure claims that provided service connection for diseases other than chloracne, VA was required to readjudicate previously denied claims if the denials had been voided by the District Court's 1989 decision. *Nehmer* Stipulation, para. 3; *see Nehmer II,* 32 F.Supp.2d at 1177. The *Nehmer* Stipulation further provided that the effective date for an award resulting from such readjudication would be the date of the claim upon which the voided decision was predicated [hereinafter Stipulation 1]. *Nehmer* Stipulation, para. 5; *see Nehmer II,* 32 F.Supp.2d at 1177. In addition, the parties stipulated that, for awards based on herbicide-exposure claims filed after May 3, 1989, the effective date for such awards would be "the date the claim was filed or the date the claimant became disabled or death occurred, whichever is later" [hereinafter Stipulation 2]. *Nehmer* Stipulation, para. 5.

On October 20, 1989, the appellant submitted to the RO a statement in support of claim, stating that she had been awarded benefits under the Agent Orange Veteran Payment Program and that she wished to reopen her claim for DIC. R. at 128. The RO responded that, because the District Court had directed VA to reconsider its regulations regarding dioxin exposure, the RO was unable to take immediate action on her claim but would consider her claim after that process was completed. R. at 134.

In February 1991, Congress enacted the Agent Orange Act of 1991, Pub.L. No. 102–4, § 2, 105 Stat. 11 (1991) (Agent Orange Act), which provided that Vietnam veterans were entitled to presumptive service connection for diseases specified therein, as well as for diseases subsequently identified by regulation as having a relation to exposure to herbicide agents. *See* 38 U.S.C. § 1116 (codifying most provisions of the Agent Orange Act). Under the authority of the Agent Orange Act, VA subsequently promulgated final regulations, effective June 9, 1994, that provided that veterans exposed to herbicide agents during active military service were entitled to presumptive service connection for enumerated conditions (including respiratory cancers) becoming manifest to a degree of 10% or more during a specified period. 59 Fed.Reg. 29, 724 (1994) (amending 38 C.F.R. §§ 3.307(a) and 3.309(e), under the authority of the Agent Orange Act, to provide presumptive service connection for multiple myeloma and respiratory cancers); *see* 38 C.F.R. §§ 3.307(a)(6), 3.309(e) (2000). VA then began readjudicating claims when it determined that a prior denial had been voided by *Nehmer I,*

as well as those claims that had been held in abeyance pending the new regulations.

As a consequence, the appellant's claim, which had been held in abeyance since 1989, was decided by the RO in July 1994, at which time the RO issued a decision granting service connection for the cause of the veteran's death. R. at 143–45. In that decision, the RO stated that, "[u]nder the provisions of the Agent Orange Act of 1991[,] lung cancer was conceded to be the result of exposure to herbicides," and concluded that, because the veteran had served in Vietnam, the lung cancer that caused his death was presumed to be service connected. R. at 144. The appellant was subsequently awarded DIC with an October 20, 1989, effective date, based on the date of her 1989 application to reopen her claim. R. at 147. In October 1994, she submitted to the RO a statement essentially asserting that the effective date for her award of DIC should be 1979, based on her original claim for DIC. R. at 152. In response, the RO notified the appellant that "[t]he regulation permitting a presumption of service connection for lung cancer due to exposure to herbicides in Viet Nam became effective June 9, 1994," and that "benefits based on a new regulation may not be paid from a date prior to the effective date of the new regulation." R. at 154. The RO further stated that, as a result of *Nehmer I:*

1) Claims denied prior to September 26, 1985, were considered to be valid, and, thus, final;

2) Claims, original and reopened, filed after September 26, 1985, were not to be decided until the Secretary of Veterans Affairs issued a ruling and put into effect regulations holding [that] either a claimed disability or cause of death could be attributed to service in Viet Nam or until the list of herbicide[-]relat-

ed disabilities was considered complete; and

3) Once a disability or cause of death was ruled to be caused by service in Viet Nam, benefits could be paid retroactively to the date of filing of original or reopened claims after September 26, 1985.

R. at 154. The RO then stated that the appellant's October 1989 claim to reopen had permitted a retroactive effective date, but that denials prior to September 1985 were considered valid under *Nehmer I.* R. at 155. The appellant timely appealed that decision. R. at 159, 168.

In the April 1998 BVA decision on appeal, the Board stated that in July 1994 the appellant had been awarded DIC pursuant to a liberalizing law. R. at 3. (The Court notes that the Board initially specified the Agent Orange Act as the pertinent liberalizing law (R. at 3), but later in its decision referred to "the liberalizing regulation" (R. at 4).) After setting forth the statutory and regulatory restrictions regarding effective dates for awards based on liberalizing laws, the Board stated that, despite those restrictions, the *Nehmer* Stipulation provided for the assignment of an effective date earlier than the date of the liberalizing law, "but only if the appellant's earlier claim had involved an allegation that the veteran's death resulted from Agent Orange exposure, and it had been denied under the former 38 C.F.R. § 3.311a, or had been a pending claim that was held in abeyance by VA." R. at 4 (emphasis omitted). In this regard, the Board first determined that the *Nehmer* Stipulation was applicable to the 1989 claim that had been held in abeyance. R. at 5. The Board then concluded that because former 38 C.F.R. § 3.311a had not been promulgated at the time of the 1980 and 1985 denials of the appellant's claim, those denials were not affected by *Nehmer*

*I* or the *Nehmer* Stipulation and, thus, the effective date for a subsequent award of DIC "may not be based on the date of any claim leading to [those] denials." R. at 5. In conclusion, the Board, citing 38 C.F.R. § 3.400(r), determined that, because the 1980 and 1985 denials were final, "an effective date may be assigned no sooner than the claim to reopen" and that, in light of the *Nehmer* Stipulation, "the RO properly assigned the earliest possible effective date for its grant of the reopened claim." R. at 5.

Subsequent to the BVA decision on appeal, the District Court in February 1999 issued another opinion in the litigation concerning VA's Agent Orange regulations. *Nehmer II*, 32 F.Supp.2d at 1175. In that opinion, the District Court noted that *Nehmer I* had "void[ed] all benefit decisions made under 38 C.F.R. § [3.]311[a](d)" and that under the *Nehmer* Stipulation VA was required "to reopen and readjudicate previously denied claims that were voided by the Court's May 1989 order if and when the VA issue[d] new Agent Orange regulations service-connecting diseases other than chloracne." *Nehmer II*, 32 F.Supp.2d at 1176–77. In describing the impetus for the *Nehmer II* litigation, the District Court stated:

> The instant dispute concerns the scope of the VA's readjudication obligations under [the *Nehmer* Stipulation].... [T]he VA ... has found that a number of diseases, besides chloracne, are service connected based on their link to Agent Orange. Thus, there are many class members who, *during the time period when the invalid regulation was in effect,* filed a claim for service-connected benefits based on a disease that the VA did not then recognize as linked to Agent Orange—but which the VA now recognizes is so linked pursuant to its revised Agent Orange regulations.

> *Those claims were, of course, all denied at the time they were filed.*

> The VA has taken the position that [the *Nehmer* Stipulation] does not require it to readjudicate *such claims* unless (1) the claim specifically alleged that Agent Orange (or herbicides) was a factor in the veteran's death or injury, or (2) the VA's denial of the benefits expressly cited to 38 C.F.R. § 3.311a as grounds for the denial.

*Nehmer II*, 32 F.Supp.2d at 1177–78 (emphasis added).

In rejecting VA's position, the District Court reasoned, with respect to the first readjudication criterion, that "if a veteran failed to raise the Agent Orange issue because he knew it was useless to do so under 38 C.F.R. § 3.311a(d), then the veteran was denied benefits as a result of the invalid regulation just as surely as if he had expressly raised the issue and it had been rejected." *Nehmer II*, 32 F.Supp.2d at 1180. The District Court also reasoned that the first criterion was overly narrow because "the Agent Orange regulation itself imposed no special pleading requirement" and because, under the nonadversarial VA adjudication system, claimants are not required to specify a legal basis upon which benefits may be predicated. *Nehmer II*, 32 F.Supp.2d at 1180–81. With regard to the second criterion, the District Court reasoned that, prior to February 1990, VA was not required to provide any reasons in its denials of benefits and that "VA's failure to expressly cite to 38 C.F.R. § 3.311a(d) in a denial prior to February 1990 is thus hardly a reliable indication that the regulation was not in fact considered." *Nehmer II*, 32 F.Supp.2d at 1182. In sum, the District Court concluded that VA's readjudication criteria were "overly formalistic and simplistic" and would preclude readjudication of some claims that had actually been de-

nied under the invalidated regulation. *Nehmer II*, 32 F.Supp.2d at 1180. After rejecting VA's position as to what claims had been voided by *Nehmer I*, the District Court then held that, although *Nehmer I* "did not intend to void every decision," it had

> intended ... the voiding of those decisions that involved a disease that is later service connected based on a revised, valid Agent Orange regulation. In short, by voiding all benefit decisions "made under 38 C.F.R. § 3.311a(d)," the Court did not void every pre-May 1989 benefit decision; rather it only voided those decisions in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected.

*Nehmer II*, 32 F.Supp.2d at 1183.

On appeal, the appellant avers that the test relied upon by the BVA in determining that the effective date could not be predicated on the claims denied in 1980 and 1985 was invalidated by *Nehmer II*. Appellant's Brief (Br.) at 10–11. She contends that under the standard set forth in *Nehmer II* she is entitled to an August 1979 effective date (the date she filed her original claim for DIC) because the 1980 and 1985 denials were voided by *Nehmer I*. Appellant's Br. at 11–12. The Secretary responds that the appellant's 1979 and 1985 claims were denied prior to the effective date of the regulation that was invalidated by *Nehmer I* and that neither *Nehmer I* nor *Nehmer II* "addressed or voided" those decisions. Secretary's Br. at 8. The Secretary asserts that the 1980 and 1985 denials are thus final and that the effective date for the reopened claim can be no earlier than the date of the claim to reopen or the date entitlement arose, whichever is later. Secretary's Br. at 8. The Secretary acknowledges that, although the liberalizing law pursuant to

which benefits were eventually awarded was not promulgated until June 1994, the RO, pursuant to the *Nehmer* Stipulation, awarded the appellant an effective date prior to June 1994 based on her 1989 claim. Secretary's Br. at 8–9. In sum, the Secretary concludes that there is no legal basis for assigning an effective date prior to the date of the appellant's 1989 claim. Secretary's Br. at 4, 9.

## II. ANALYSIS

The determination of the effective date for an original claim or a reopened claim is governed by 38 U.S.C. § 5110(a), which provides: "Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim [or] a claim reopened after final adjudication ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." *See* 38 C.F.R. § 3.400 (2000). Thus, in general, the effective date for an award of benefits will be based on the date of the claim that resulted in that award. *See Lalonde v. West*, 12 Vet.App. 377, 380 (1999). However, pursuant to 38 U.S.C. § 5110(g), "where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with facts found but shall not be earlier than the effective date of the Act or administrative issue." *See McCay v. Brown*, 9 Vet.App. 183, 187 (1996) ("plain language of section 5110(g) prohibits a retroactive award prior to the effective date of the legislation"), *aff'd*, 106 F.3d 1577 (Fed.Cir.1997); 38 C.F.R. § 3.114(a) (1999). Additionally, for claims based on diseases deemed by the Secretary to be related to herbicide exposure, the *Nehmer* Stipulation provides that "as to any denials of claims which were voided as a result of [*Nehmer I*], the

effective date for disability compensation or [DIC], if the claim is allowed upon readjudication ... will be the date the claim giving rise to the voided decision was filed." Stipulation 1. With respect to herbicide-exposure claims filed after May 3, 1989, Stipulation 2 provides that the effective date for an award resulting from such a claim will be the date the claim was filed or the date that the claimant became disabled or death occurred, whichever is later.

The legal questions in the instant case revolve around whether *Nehmer I* and *Nehmer II* had the legal effect of voiding the 1980 and 1985 denials of the appellant's August 1979 and June 1985 DIC claims; whether, if those denials were voided, there is a legal basis for an earlier effective date under Stipulation 1 or the statutory and regulatory effective date provisions; and whether, if the denials were not voided, there is a legal basis for an earlier effective date, under Stipulation 2 or the statutory and regulatory effective-date provisions, based on the 1979, 1985, or 1989 claim.

### A. The 1979 and 1985 Claims

■ The Agent Orange regulation at issue in the *Nehmer* proceedings, 38 C.F.R. § 3.311a, became effective on September 25, 1985. 50 Fed.Reg. 34, 458 (1985). The District Court, in May 1989, "void[ed] all benefit decisions made under [38 C.F.R. § 3.311a(d) (1986)]" (*Nehmer I,* 712 F.Supp. at 1409), and thereafter held in *Nehmer II* that *Nehmer I* had "voided those decisions in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected" (*Nehmer II,* 32 F.Supp.2d at 1183). Initially, the Court acknowledges that the language of the ultimate holding in *Nehmer II* is quite broad and that, when viewed in isolation, some of that language could be subject to the interpre-

tation (as advanced by our dissenting colleagues) that *every* pre-1989 denial was voided if the claimed condition were later found to be presumptively service connected under valid Agent Orange regulations. However, it is clear from the District Court's statements in its 1987 class certification order and in its *Nehmer II* opinion that the denials that the District Court intended to void in *Nehmer I* and *Nehmer II* were only those that occurred during the period when the now-invalidated regulation was in effect (September 1985 to May 1989). Indeed, the District Court in its 1987 order noted that any plaintiffs whose claims had been denied prior to the promulgation of § 3.311a lacked standing to challenge those denials and had been included in the class only because they shared "a threat of *future* harm [from § 3.311a] with other class members." *Nehmer,* 118 F.R.D. at 117 (emphasis added). In addition, the District Court in *Nehmer II* specifically referred to claims that had been denied "during the time period when the invalid regulation was in effect" and stated that VA's refusal to readjudicate "such claims" had resulted in that litigation. *Nehmer II,* 32 F.Supp.2d at 1177–78. Moreover, the District Court essentially determined that VA's criteria were too formalistic because they would erroneously preclude readjudication of claims constructively denied under former § 3.311a if, at the time of the denial, it were possible for VA or the affected claimants to have specifically referenced or cited to former § 3.311a but they had not done so. The District Court thus contemplated that, in order for the denial of a claim to have been voided by *Nehmer I,* that denial must have occurred while § 3.311a was in effect.

In view of the discussion in the preceding paragraph, the Court concludes that neither *Nehmer I* nor *Nehmer II* was in-

tended to have the legal effect of voiding either the October 1980 or the June 1985 denial of the appellant's 1979 and 1985 claims, respectively, both of which occurred prior to the promulgation of former § 3.311a. *See generally YBM Magnex, Inc. v. International Trade Comm'n*, 145 F.3d 1317, 1320 (Fed.Cir.1998) (meaning or interpretation of precedent is question of law); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (Court reviews questions of law de novo); *see also Maggitt v. West*, 202 F.3d 1370, 1377 (Fed.Cir.2000) (Court has jurisdiction to hear arguments presented to it in first instance, provided it otherwise has jurisdiction over claim). Accordingly, Stipulation 1, which by its terms applies only where a prior decision has been voided by *Nehmer I*, is inapplicable. Further, because the 1979 and 1985 claims resulted in denials that remain final, those claims cannot serve as a basis for an earlier effective date under the statutory or regulatory effective-date provisions. *See* 38 U.S.C. § 5110(a); *Lalonde*, 12 Vet.App. at 381 (date of application that had resulted in final denial could not serve as basis for effective date of subsequent award of service connection); *Washington v. Gober*, 10 Vet.App. 391, 393 (1997); *Wright v. Gober*, 10 Vet.App. 343, 346–47 (1997); 38 C.F.R. § 3.400.

Alternatively, even assuming for purposes of our analysis that *Nehmer I* and *Nehmer II* did void the 1980 and 1985 denials of the appellant's claim, and that Stipulation 1 is therefore applicable, the appellant would not be entitled to an earlier effective date. As discussed in part II.C. below, the July 1994 award of DIC in this case was made pursuant to liberalizing regulations that became effective on June 9, 1994. Thus, under 38 U.S.C. § 5110(g), the effective date can be no earlier than the June 1994 effective date of those liberalizing regulations. *See McCay, supra; see also OPM v. Richmond*, 496 U.S. 414, 416, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("payments of money from the Federal Treasury are limited to those authorized by statute").

### B. The 1989 Claim

■ As to the 1989 claim, the Court first notes that, in determining the proper effective date for the award based on the 1989 claim, the Board cited to both 38 C.F.R. § 3.400(r), which would govern the effective date for an award based on a claim to reopen (*see* 38 U.S.C. §§ 5108, 7104(b)) and also to the language of Stipulation 2, which would apply only to an award made under new Agent Orange regulations. R. at 3–5. However, as the Court has previously held, an award made pursuant to a new law or regulation would not also be considered an award made pursuant to a reopened claim, even where there was a prior final denial. *See Spencer v. Brown*, 4 Vet.App. 283, 289 (1993) ("[w]here a claim is based upon a substantive right created by a statutory or regulatory provision that did not exist at the time of the prior final denial of the claim, adjudication of the latter claim is not a 'reopening' of the first"), *aff'd*, 17 F.3d 368 (Fed. Cir.1994); *see also* 38 U.S.C. § 7261(b).

■ Even assuming that the award of DIC in the instant case was properly deemed to have been the result of a claim to reopen, the appellant would not be entitled to an effective date earlier than October 1989—the date of the purported claim to reopen. *See* 38 U.S.C. § 5110(a) (effective date for award based on reopened claim "shall not be earlier than the date of receipt of application therefor"); *Flash v. Brown*, 8 Vet.App. 332, 340 (1995) ("when claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen"); 38 C.F.R. § 3.400(r). Assuming, alternatively, that the award was

made pursuant to liberalizing regulations that became effective in June 1994 (*see infra* part II.C.) and that Stipulation 2 was therefore applicable, the application of Stipulation 2 would not result in the assignment of an earlier effective date. That stipulation provides for an effective date as of the date of the claim (here October 1989) or the date that death occurred (here June 1979), whichever is later, and the appellant has already been assigned an effective date commensurate with the later of those two dates (October 1989). In this regard, the Court notes that, although the October 1989 effective date provided for by Stipulation 2 is earlier than that permitted by section 5110(g) (*see infra* part II.C.), the Court cannot address the extent to which the Board's assignment of an effective date based on Stipulation 2 may have violated the provisions of section 5110(g). *See* 38 U.S.C. §§ 7252(a) (Court has jurisdiction to review decisions of Board; Secretary may not seek review of any such decision), 7266(a); *Nolen v. Gober*, 222 F.3d 1356 (Fed.Cir.2000); *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (Court's jurisdiction is confined to review of final Board decisions that are adverse to claimant).

### C.  38 U.S.C. § 5110(g)

Our dissenting colleagues assert that the denials of the 1979 and 1985 claims were voided by *Nehmer I* and *Nehmer II* and that, under Stipulation 1, the effective date should be predicated on the date of her 1979 claim. They appear to acknowledge, however, that, even if the claim had remained open since 1979, an effective date earlier than the date of the liberalizing law that provided for presumptive service connection would be prohibited under section 5110(g). They appear then to conclude that the 1984 Dioxin Act was the liberalizing law "pursuant to" which presumptive service connection was eventually awarded.

At a minimum, what our dissenting colleagues fail to recognize is that no law or regulation provided presumptive service connection for the particular condition that caused this veteran's death (respiratory cancer) until the 1994 regulatory amendments of 38 C.F.R. §§ 3.307(a) and 3.309(e) that became effective on June 9, 1994. 59 Fed.Reg. 29,723 (1994). Because service connection for the cause of the veteran's death was awarded in July 1994 on a presumptive basis (*see* R. at 144 ("service connection for cause of death is conceded")), an effective date prior to June 9, 1994 (the effective date of that administrative issue), is prohibited by 38 U.S.C. § 5110(g).

Moreover, even assuming that under 38 U.S.C. § 5110(g) the effective date of the DIC award could relate back to the effective date of the act pursuant to which the liberalizing regulations were promulgated (rather than the effective date of the regulations themselves), such a construct would result in an effective date based on the Agent Orange Act of 1991, not the 1984 Dioxin Act. As is specifically stated by the final rule published in 59 Fed.Reg. 29,723 (1994), the amendments to 38 C.F.R. §§ 3.307(a) and 3.309(e) were "necessary to implement a decision of the Secretary ... under the authority granted by *the Agent Orange Act of 1991* that there is a positive association between exposure to herbicides used in the Republic of Vietnam ... and the subsequent development of ... respiratory cancers." (Emphasis added.) Likewise, the regulations, as amended by that administrative issue, cite to 38 U.S.C. § 1116 as the authority pursuant to which they were promulgated, and section 1116, in turn, was enacted in the Agent Orange Act of 1991. *See* 38 U.S.C. § 1116, Note. Thus, even if the appellant were entitled to an effective date based on the date of the statute that provided authority

for regulations under which presumptive service connection for respiratory cancer was awarded, that would lead to an effective date no earlier than 1991–the effective date of the Agent Orange Act.

## III. CONCLUSION

In sum, regardless of whether the appellant was awarded DIC pursuant to a reopened claim, pursuant to a liberalizing law effective in 1991, or pursuant to liberalizing regulations effective in 1994, we find no legal basis, under the *Nehmer* Stipulation or under the title 38 statutory and regulatory effective-date provisions, for assigning the appellant an effective date earlier than October 1989. Accordingly, the April 28, 1998, BVA decision is AFFIRMED.

KRAMER, Chief Judge, with whom STEINBERG, Judge, joins, stating separately:

While this appeal was pending before this Court, Congress enacted the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat.2096 (Nov. 9, 2000) (VCAA). On November 13, 2000, the Court issued a miscellaneous order of general applicability, *In re Veterans Claims Assistance Act of 2000*, 15 Vet.App. 27 (2000) (en banc order), that, inter alia, generally invited responses by any party to an appeal as to the impact of the VCAA on the disposition of that appeal. Notwithstanding that general invitation, neither party to this case has argued that application of the VCAA could be beneficial to the appellant. Accordingly, the Court in its majority opinion has not addressed the VCAA. I write separately to explain that the Court's silence as to the VCAA does not reflect any view of the Court as to whether the VCAA is inapplicable to the appellant's claim. *See generally Disabled American Veterans v. Gober*, 234 F.3d 682, 688 n. 3, 704 & nn. 11–12 (Fed.Cir.2000) (stating that court would "only address those challenges that were briefed"; addressing challenges to validity of 38 C.F.R. § 20.1411(c) and (d) under pre-VCAA versions of 38 U.S.C. §§ 5103(a) and 5107(a) but recognizing that those provisions had been amended by VCAA). Rather, it reflects the Court's reliance on the principle that ordinarily the Court will not review issues that are not raised to it. *Cf. Savage v. Gober*, 10 Vet.App. 488, 498 (1997) (declining to address issue first raised after appellant filed motion for panel review). *See generally Seal–Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 842 (Fed.Cir.1999). However, nothing in the majority's opinion precludes the Court from exercising its discretion sua sponte to remand an appeal under *Luyster v. Gober*, 14 Vet.App. 186, 186–87 (2000) (per curiam order) (holding that remand is required pursuant to VCAA § 7(a)(2) where Board of Veterans' Appeals (Board) had found that claim was not well grounded), or *Holliday v. Principi*, 14 Vet.App. 280, 290 (2001) (remanding claim where VCAA was "potentially applicable" in order for Board to determine whether VCAA applies).

IVERS, Judge, with whom FARLEY, Judge, joins, dissenting:

We must dissent because, in our opinion, the majority has not gone far enough. In deciding this case, the Court must give full consideration to the long, often difficult debate surrounding the Agent Orange controversy. That consideration must include, but not be limited to, the *Nehmer* litigation and Congress' efforts, which precede *Nehmer*, to address and resolve the controversy. That consideration must also be coupled with the now-familiar guidance from the U.S. Court of Appeals for the Federal Circuit that courts have "long recognized that the character of the veteran's

benefits statutes is strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed.Cir.1998); *see, e.g., Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) (veteran statutes must be liberally construed for the benefit of the returning veteran) (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946)); *see also Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir.2000) (noting in determining whether a claim is well grounded that "the low threshold is . . . appropriate in light of the uniquely pro-claimant nature of the veterans compensation system"); *Hayre v. West*, 188 F.3d 1327, 1334 (Fed.Cir.1999)(veterans system is "uniquely claimant friendly system of awarding compensation"); *Disabled American Veterans v. Gober*, 234 F.3d 682, 692 (Fed.Cir. 2000) (noting that, where statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor" (citing *Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994))); *see also McKnight v. Gober*, 131 F.3d 1483, 1485 (Fed.Cir.1997); *Smith v. Brown*, 35 F.3d 1516, 1522 (Fed.Cir.1994) (noting the "uniquely pro-claimant principles underlying the veterans' benefits dispensation scheme").

Members of the majority have previously emphasized and relied upon that guidance. *See Gallegos v. Gober*, 14 Vet.App. 50, 56 (2000); *Tetro v. Gober*, 14 Vet.App. 100, 111 (2000) (Kramer J., dissenting); *Moore v. West*, 13 Vet.App. 69, 73–74 (1999) (Steinberg J., concurring); *Klekar v. West*, 12 Vet.App. 503, 509–10 (1999) (Kramer J., dissenting); *Laruan v. West*, 11 Vet.App. 80 (1998) (Kramer and Steinberg, JJ., dissenting)(noting, ". . . the *pro-claimant bias* intended by Congress throughout the VA system"). Recently, three of the judges in the majority strongly supported a liberal interpretation of the recently enacted Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat.2096 (Nov. 9, 2000) when determining what claims were subject to remand and whether the VCAA was to apply retroactively. *See Holliday v. Principi*, 14 Vet. App. 280 (2001). The majority is unwilling to afford this appellant that same standard of liberal interpretation. If that standard is applied here, the result changes. Set forth below is that result.

After the Board's decision in the present case, the United States District Court for the Northern District of California, on February 11, 1999, entered a class action order in which that court clarified, inter alia, which prior benefit decisions were affected by the stipulation and order arising from the 1989 decision in *Nehmer I*. In *Nehmer v. United States Veterans Administration*, 32 F.Supp.2d 1175 (N.D.Cal. 1999) (*Nehmer II*), the District Court held that "all benefit decisions which involved claims in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected" were subject to the *Nehmer I* stipulation and order. *Id.* at 1183.

The motion filed on behalf of the class in *Nehmer II* alleged that VA was construing one aspect of the *Nehmer I* stipulation and order too narrowly, so that members of the class were being denied the full extent of retroactive benefits to which they were entitled. *Id.* at 1176. As relevant to the present appeal, the *Nehmer II* court found to be too restrictive the VA requirement that a VA denial of benefits for an Agent Orange-related claim must have specifically cited 38 C.F.R. § 3.311a(d) as grounds for the denial for that claim to be subject to readjudication under a subsequently enacted or amended Agent Orange regulation. *Id.* at 1182. The court found that the effect of that requirement was to exclude from readjudication some claims that

should have been readjudicated. *Id.* The court went further and more specifically identified claims eligible for readjudication, referencing those claims as claims for which decisions denying benefits were voided by *Nehmer I*:

> This then leaves the question of exactly which benefits denials did the Court void? The VA argues that if the Court did not void *only* those decisions in which the claim or the denial expressly referenced Agent Orange or 38 C.F.R. § 3.311a, then the only other possibility is that [the] Court voided *every* benefit decision. It reasons that if there is no pleading requirement, then *every* claim was theoretically made under 38 C.F.R. § 3.311a, and therefore we must have voided *every* benefit decision that predates our decision in May of 1989—a result the Court could not have intended.

> Certainly the Court did not intend to void every decision; however, the VA's suggestion that this is the only other option is plainly incorrect. As explained above, the Court's order, read fairly in context, intended a middle ground-the voiding of those decisions that involved a disease that is later service connected based on a revised, valid Agent Orange regulation. In short, by voiding all benefits decisions "made under 38 C.F.R. § 3.311a(d)," the Court did not void *every* pre-May 1989 benefit decision; rather it only voided those decisions *in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected.* This is a discrete group of benefit decisions, the scope of which is defined by the VA's own regulations which later service connect certain diseases based on their link to Agent Orange.

> This interpretation of the Court's May 1989 decision is also most consistent with Congress' purpose in enacting the 1984 Dioxin Act. Congress passed that Act to ensure that Vietnam veterans exposed to Agent Orange would obtain benefits for all disabilities that are connected to their service:

>> The purpose of this Act ... is to *ensure that Veterans' Administration disability compensation is provided to veterans who were exposed during service in the Armed Forces in the Republic of Vietnam to a herbicide containing dioxin ... for all disabilities arising after that service are connected, based on sound scientific and medical evidence, to such service* (and that Veterans' Administration dependency and indemnity compensation is provided to survivors of those veterans for all deaths resulting from such disabilities).

> 38 U.S.C. § 1154 note, section 3 (emphasis added). The VA's narrow view of this Court's order only serves to undermine, rather than protect, the ability of Vietnam veterans to obtain compensation for the devastating effects of diseases that are linked to Agent Orange, and hence their service in Vietnam.

*Nehmer II*, 32 F.Supp.2d at 1182–83 (emphasis in original).

Careful reading of this part of the *Nehmer II* decision shows the development, over time, of a refined definition of which claim denials were voided by *Nehmer I*. *Nehmer I* invalidated 38 C.F.R. § 3.311a(d) and all benefit denials made under that regulation. *Nehmer I*, 712 F.Supp. at 1423. *Nehmer II* defined and explained in detail which benefit denials were covered by *Nehmer I*, specifically interpreting "made under 38 C.F.R. § 3.311a(d)" to mean "those decisions *in which the disease or cause of death is later found—under valid Agent Orange regula-*

tion(s)—to be service connected." *Nehmer II,* 32 F.Supp.2d at 1183 (see above).

By specifically rejecting the Secretary's argument that a claim or denial must have expressly referenced Agent Orange or have been denied under 38 C.F.R. § 3.311a for *Nehmer I* to apply, and rejecting the notion that every benefit decision made prior to May 1989 would be void absent that requirement, the *Nehmer II* court interpreted the *Nehmer I* stipulation and order as intending a "middle ground." *Id.* The *Nehmer II* decision characterized the "middle ground" as being consistent with the provision of the 1984 Dioxin Act for disability compensation to be paid to veterans, and DIC to the survivors of veterans, who had disabilities resulting from in-service exposure to Agent Orange. *Id.*

In the present case, VA ultimately recognized, in the 1994 rating decision, the cause of the veteran's death, lung cancer, as connected to service due to exposure to Agent Orange in Vietnam. *See* R. at 144–50. Based on an erroneous interpretation of *Nehmer I,* however, the Board denied an effective date earlier than October 20, 1989, for the appellant's DIC award because her claims filed before that date had not been denied under 38 C.F.R. § 3.311a. R. at 5. In light of the decision in *Nehmer II,* the denials of the appellant's claims for DIC that had been filed in 1979 and 1985 were voided by the stipulation and order in *Nehmer I. See* discussion in *Nehmer II, supra.* The remaining question before the Court then, is whether the effective date of the appellant's award of DIC should be based on the date of one of her earlier claims, since the decisions denying those claims were voided. *See generally,* 38 U.S.C. § 5110 (statutory provisions for assigning effective dates for award of VA benefits).

The text of the 1984 Dioxin Act (Act), and its legislative history are instructive in resolving this question. *See* Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984)(found, in part, at 38 U.S.C. § 1154 note). The Act acknowledged the scientific and medical uncertainty regarding the long-term adverse health effects that Vietnam veterans might experience due to exposure to herbicides containing dioxin (such as Agent Orange). 38 U.S.C. § 1154 note, section 2. A section of the Act provided for interim benefit payments to be made to Vietnam veterans who filed claims based on exposure to dioxin. 38 U.S.C. § 1154 note, section 9. The provision explicitly stated the earliest permissible effective date for the payments: "(h)(1) This section takes effect as of October 1, 1984. No benefit may be paid under this section for a period before that date." *Id.*

The Act further required VA to promulgate regulatory guidelines, after receiving advice from the Scientific Council of the Veterans' Advisory Committee on Environmental Hazards [hereinafter Committee], that would specify diseases for which service connection would be granted based on exposure to dioxin. 98 Stat. 2726–28. The work of the Committee and the process of enacting regulations was contemplated to be ongoing for an indefinite time. 38 U.S.C. § 1154 note, section 6(f). It is this ongoing process by which the determination as to "sound scientific and medical evidence" is made. 38 U.S.C. § 1154, The enactment of the Agent Orange Act of 1991 and the adoption of regulatory amendments in subsequent years has implicitly affirmed the intent to leave open the possibility of later—determined associations between diseases or conditions and exposure to dioxin. *See* 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6) and 3.309(e). It is apparent, therefore, that the 1984 Dioxin Act is the legislation enabling VA's provi-

sion, at that time and at any future date, of disability and survivor compensation based on exposure to Agent Orange in Vietnam.

When VA benefits are awarded pursuant to an act of Congress, such as the 1984 Dioxin Act in this case, veterans law provides that the effective date of the award "shall not be earlier than the effective date of the Act," and will not be retroactive for more than one year from the earlier of the date of the application for benefits or the date of the administrative determination of entitlement. 38 U.S.C. § 5110(g). The limit on retroactive effectiveness of an award is not applicable here, as becomes evident in the ensuing analysis.

The appellant's June 1985 claim for DIC is one of a limited number of claims for which VA decisions denying benefits were voided by the decision in *Nehmer I. See* discussion of *Nehmer II, supra.* While she filed a subsequent claim for DIC, that is, in 1989, the later claim is merely an extension of the original 1985 claim for purposes of this effective date analysis.

For purposes of determining an effective date for her award of DIC, *see* 38 U.S.C. § 5110(g), it is clear that the appellant is not entitled to an effective date based on the date of her 1979 claim. First, Congress did not intend for awards pursuant to the 1984 Dioxin Act to predate that Act. For example, Congress explicitly stated that October 1, 1984, was the earliest effective date for the payment of interim benefits under the 1984 Act. 38 U.S.C. § 1154 note, section 9. Nothing in future amendments, acts, or regulations indicated that an earlier effective date was intended for later benefit payments. The Agent Orange Act of 1991 provided for the effective date of new regulations, but did not address the effective date of payments awarded pursuant to the regulations. *See* 38 U.S.C. § 1116(c).

Similarly, allowance for effective dates of awards that would pre-date the 1984 Act was not suggested in either *Nehmer* decision. The court in *Nehmer II* noted that "VA's own regulations" defined the discrete group of benefit decisions voided by *Nehmer I,* indicating deference to veterans law as controlling for decisions concerning those resurrected claims, including the assignment of effective dates of benefit payments. *See* discussion of *Nehmer II, supra.*

Therefore, without an explicitly legislated exception, and consistent with the statutory allowance for effective dates for awards of benefits pursuant to acts of Congress, the appropriate effective date for benefits awarded for Agent Orange-related claims filed before enactment of the 1984 Dioxin Act is October 24, 1984, the effective date of that Act. *See* 38 U.S.C. § 5110(g). The effective date for benefits awarded for Agent Orange-related claims filed after that October 24, 1984, would be determined based on the date that the claim was filed. Since the appellant's June 1985 DIC application was filed within one year of the effective date of the 1984 Dioxin Act, as required by section 5110(g), she is entitled to the effective date of the Act, October 24, 1984, as the effective date of her award of DIC. *See* 38 U.S.C. § 5110(g).

For the reasons set forth above, we would reverse the decision of the Board and remand the matter for award of DIC with an effective date of October 24, 1984.