# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-0256

FLORENCE KENNEDY, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 18, 2020                              Decided December 9, 2020)

*Kevin A. Medeiros*, with whom *Zachary M. Stolz*, *Barbara J. Cook*, *Kaitlyn C. Degnan*, and *Amy F. Odom*, all of Providence, Rhode Island, appear for the appellant.

*Anna M. Castillo*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, TOTH, and FALVEY, *Judges*.

ALLEN, *Judge*: VA is a vast governmental agency that administers benefits to countless veterans and their families. Such a large organization requires a complex web of laws, procedures, rules, and guidelines to move claims through the system. This labyrinth of guidance is complicated by the fact that not every administrative directive binds the entire Agency. Some things bind only a part of VA while others are more comprehensive. Although it was not immediately apparent, it turns out that the appeal before us today requires that we explore a part of this web of guidance.

Appellant Florence Kennedy is the surviving spouse of veteran Keith D. Kennedy, who served the Nation honorably in the United States Army for nearly 7 years.[1] In this appeal, which is timely and over which this Court has jurisdiction,[2] she challenges a November 1, 2018, decision of the Board of Veterans' Appeals that denied an effective date before July 7, 2015, for the award of dependency and indemnity compensation (DIC) benefits based on service connection for the veteran's cause of death. This matter was submitted to a panel of the Court to address whether VA

---

[1] Record (R.) at 311, 313, 922.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

Fast Letter 13-04 constitutes a liberalizing law or issue approved by the Secretary or by the Secretary's direction pursuant to 38 C.F.R. § 3.114(a) such that an earlier effective date could be warranted. Because we hold that VA Fast Letter 13-04 constitutes neither a "law" nor a "VA issue" under § 3.114(a), we will affirm the Board's decision.

## I. FACTS AND PROCEDURAL HISTORY

When he died on November 1, 2005, the veteran was service connected for depression and a left knee condition, and he had been awarded a total disability rating based on individual unemployability.[3] His death certificate lists depression as a contributory cause of death.[4] Also in November 2005, appellant filed, as the veteran's surviving spouse, a claim for service connection for the veteran's cause of death.[5] In a January 2006 rating decision, a VA regional office (RO) denied appellant's claim. Appellant does not argue, nor does the record reflect, that she appealed this decision. Therefore, that decision became final.

In September 2007, appellant submitted a request to reopen her claim for service connection for the cause of the veteran's death.[6] In connection with her claim, in January 2008, a VA doctor opined that it was less likely than not that the veteran's death resulted from his service-connected depression.[7] Based on this opinion, in a February 2008 rating decision the RO continued to deny appellant's claim concerning the cause of the veteran's death.[8] Appellant again did not appeal this decision and it too became final. In August 2009, appellant submitted yet another request to reopen her claim. In September 2010, the RO denied her relief again.[9] Once again, appellant did not appeal this decision.

Appellant was persistent in her quest. In July 2015, she submitted another request to reopen her claim for benefits based on the cause of the veteran's death.[10] If past were prologue, appellant

---

[3] R. at 612-18.

[4] R. at 287.

[5] R. at 531-37.

[6] R. at 402.

[7] R. at 363.

[8] R. at 344-48.

[9] R. at 289-90.

[10] R. at 278-85.

would have fared no better this time. But past was not prologue. In October 2015, the RO granted appellant's claim and awarded her DIC benefits, effective July 7, 2015.[11] Why the about-face? VA explained the sudden change in a March 2016 letter in which it informed appellant that service connection was granted "due to new guidance on [DIC] claims as outlined in Fast Letter 13-04, which came into effect on March 22, 2013."[12] That same month, appellant filed a Notice of Disagreement with the assigned effective date, requesting VA assign an effective date retroactive to her original, November 2005 claim.[13] In an October 2018 letter, appellant, through her representative, argued that an effective date could be assigned based on 38 C.F.R. § 3.114(a) because her claim was granted based on a liberalizing law, namely Fast Letter 13-04.[14] Appellant perfected her appeal, which led to the November 2018 Board decision before us today.

In that decision, the Board denied appellant's request for an earlier effective date, concluding that July 7, 2015, the date of appellant's most recent request to reopen, was the earliest date the law allowed for receipt of the DIC benefits at issue. The Board considered whether VA Fast Letter 13-04 satisfied the requirements for an earlier effective date under § 3.114 but concluded that "changes to VA procedural manuals and guidance provisions cannot be considered 'liberalizing' changes which created the right to such benefits."[15] The Board found that Fast Letter 13-04 "governs procedural matters" and did not create a new basis for entitlement to service connection for cause of death.[16] Instead, the Board determined that the Fast Letter "merely relaxes . . . the evidentiary standard for establishing a relationship between the cause of the [v]eteran's death and his service-connected disability."[17] This appeal ensued.

---

[11] R. at 258-69.

[12] R. at 224.

[13] R. at 220-21.

[14] R. at 14-17.

[15] R. at 10.

[16] *Id.*

[17] *Id.*

## II. PARTIES' ARGUMENTS

Appellant argues that the Court should reverse the Board's determination that Fast Letter 13-04 was not a liberalizing law and direct VA to assign an earlier effective date for the award of her DIC benefits. She contends that the Fast Letter is liberalizing because it "created an unrebuttable presumption of service connection" in situations where a death certificate lists a service-connected disability as a contributory cause of death.[18] She argues that this presumption amounts to the creation of a new basis of entitlement to benefits because it "eliminated any requirement other than the submission of a death certificate listing a service-connected condition."[19] Appellant points to the fact that VA denied her claim three times before the Fast Letter took effect but granted it without question when she submitted her most recent request after the Fast Letter went into effect. Thus, because the Fast Letter is liberalizing, she argues, 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114(a) allow for a retroactive effective date of July 7, 2014, 1 year before she filed her most recent request to reopen her claim.

In response, the Secretary argues that VA Fast Letter 13-04 did not create a new cause of action but only relaxed the evidentiary standard for establishing an existing cause of action. Thus, he contends that the Fast Letter is procedural in nature, which the wording of the Fast Letter acknowledges. Additionally, the Secretary asserts that VA Fast Letters cannot create new causes of action because they are not binding on the Board. Therefore, the Secretary argues that VA Fast Letter 13-04 is not liberalizing.

Following oral argument, the Court ordered the parties to provide supplemental briefs on several issues, including the meaning of the phrase "VA issue approved by the Secretary or by the Secretary's discretion" as used in 38 C.F.R. § 3.114(a) and whether that definition includes a VA Fast Letter. Appellant argues that a "VA issue" must refer to more than just regulations and includes General Counsel (GC) opinions but not manual provisions. She contends that VA Fast Letter 13-04 is an administrative issue because it was issued pursuant to the Secretary's delegation of authority to the Under Secretary of Benefits (USB) who, in turn, delegated that authority to the director of Pension and Fiduciary Service. She also points out that the Fast Letter contains mandatory language and seeks to bind all adjudicators. To support her position, appellant relies on

---

[18] Appellant's Brief (Br.) at 9.

[19] *Id.* at 9-10.

4

caselaw from the Federal Circuit that determined that a VA Fast Letter qualified as a "rule" under the Administrative Procedure Act (APA).

The Secretary similarly argues that a "VA issue" includes matters going beyond a regulation and may include other types of documents such as GC opinions or a Presidential directive.[20] He argues that VA Fast Letter 13-04 may qualify as a "VA issue" but asserts an earlier effective date is not warranted here because VA Fast Letter 13-04 (1) was not approved by the Secretary or at the Secretary's direction and (2) is not liberalizing because it did not have a substantive effect on any benefits but only changed procedures for processing DIC claims.

## III. ANALYSIS

A surviving spouse of a deceased veteran may qualify for DIC benefits if the veteran died from a service-connected disability.[21] A veteran's death will be considered service connected when a service-connected disability was either the principal or a contributory cause of death.[22] The effective date for a grant of service connection based on DIC is generally the date of receipt of the claim or the date entitlement arose, whichever is later.[23] However, if service connection is awarded based on a "liberalizing law, or a liberalizing VA issue approved by the Secretary or by the Secretary's direction," "the effective date of such award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the act or administrative issue."[24] "If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law or VA issue, benefits may be authorized for a period of 1 year prior to the date of receipt of

---

[20] Secretary's Response at 9.

[21] 38 U.S.C. § 1310.

[22] 38 C.F.R. § 3.312(a) (2020).

[23] 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2)(1) (2018). Effective February 19, 2019, Congress amended portions of sections 5110, and VA amended portions of 38 C.F.R. §§ 3.400 and 3.114 to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* Pub. L. No. 115-55, § 2(x), 131 Stat. at 1115 (providing the effective date of statutory amendments); VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 170 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date for regulatory amendments). However, the changes apply only to claims in which an initial decision is issued after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. Such is not the case here, and we proceed under the former version of the statue and regulations.

[24] 38 C.F.R. § 3.114(a) (2015).

such request."[25] It is this provision on which appellant bases her argument that her DIC benefits should be effective in July 2014, 1 year before she filed her most recent request for those benefits.

We review the Board's determination of the effective date of a service-connected disability for clear error.[26] A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed."[27] In contrast, the Court reviews questions of law de novo without deference to the Board.[28]

Here, VA granted appellant DIC benefits based on principles set out in VA Fast Letter 13-04, the purpose of which was to "rescind[] or clarif[y] prior guidance on the processing of DIC claims to ensure timely delivery of benefits to vulnerable survivors who have an immediate need for supplemental income following the death of a [v]eteran."[29] In relevant part, Fast Letter 13-04 instructed adjudicators to

> [g]rant service connection for cause of death when the death certificate shows that the service-connected disability is the principal or contributory cause of death. If the service-connected disability was a contributory cause of death, as listed on the death certificate, presume that it contributed substantially and materially to the [v]eteran's death. Do not develop further for the causal connection between the [v]eteran's service-connected disability and the cause of death.[30]

VA rescinded Fast Letter 13-04, effective July 4, 2016, and incorporated it into the *VA Adjudication Procedures Manual* (M21-1). The M21-1 provision similarly directs adjudicators to grant DIC when "the principal or contributory cause of death shown on the death certificate matches one or more of the deceased [v]eteran's [service-connected] disabilities."[31]

In their original briefing and at oral argument, both parties focused on whether Fast Letter 13-04 was "liberalizing" under § 3.114(a). However, this focus neglected an antecedent question because whether Fast Letter 13-04 is "liberalizing" only matters if it is either a "law" or a "VA issue approved by the Secretary or by the Secretary's direction." (We will generally refer to "VA

---

[25] 38 C.F.R. § 3.114(a)(3).

[26] *Canady v. Nicholson*, 20 Vet.App. 393, 398 (2006); *see also* 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

[27] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert*, 1 Vet.App. at 52.

[28] *See Butts v. Brown*, 5 Vet.App. 532, 538 (1993) (en banc).

[29] VA Fast Letter 13-04 (Mar. 22, 2013).

[30] *Id.*

[31] M21-1, pt. IV, subpt. iii, ch. 2, sec. A.1.b.

issue approved by the Secretary or by the Secretary's direction" as "VA issue.").[32] As we will explain, we hold that Fast Letter 13-04 is neither. First, and perhaps unsurprisingly, we conclude that Fast Letter 13-04 is not a "law" under 38 C.F.R. § 3.114(a) because, based on precedent, "law" refers to statutes and regulations. Then, we turn to whether Fast Letter 13-04 is a "VA issue." Because there is no precedent from this Court or the Federal Circuit concerning the meaning of "VA issue" in § 3.114(a), we first define that term. We hold that a "VA issue" is a directive from or approved by the Secretary that is binding on VA. Turning to the facts of this appeal, we explain that we will affirm the Board's decision because Fast Letter 13-04 is not binding on VA and was not issued by the Secretary or at his direction. Given this conclusion, we do not reach the question whether Fast Letter 13-04 would be liberalizing or the embedded question concerning the appropriate test for assessing whether a "VA issue" is liberalizing. And to be absolutely clear, nothing in this opinion should be seen as expressing a view on either question.

### A. What is a "law" under § 3.114(a)?

We can dispense with this question with relative ease.[33] All cases in which this Court and the Federal Circuit have grappled with the "liberalizing" question in § 3.114(a) involved statutes and regulations.[34] And in each of these cases, we or the Federal Circuit referred to the term "law" in § 3.114(a) as what was at issue. So, while none of these decisions expressly analyzed the issue, it seems clear that the term "law" means a statute or a regulation.[35]

Of course, it could be that the term "law" is not limited to statutes and regulations. But we think that it is unlikely that the term sweeps more broadly. We say this because the test the Federal Circuit crafted for judging whether a "law" is liberalizing would not naturally apply to anything but a statute or regulation. The Federal Circuit stated that a liberalizing law was "one which

---

[32] 38 C.F.R. § 3.114(a).

[33] Today, we define the term "law" as used in 38 C.F.R. § 3.114(a) only and express no opinion as to the meaning of that term in other contexts.

[34] *See Routen v. West*, 142 F.3d 1434, 1438 (Fed. Cir. 1998) (considering 38 C.F.R. § 3.306 (1992)); *Spencer v. Brown*, 17 F.3d 368, 372 (Fed. Cir. 1994) (considering the Veterans' Judicial Review Act); *Foreman v. Shulkin*, 29 Vet.App. 146 (2018) (considering 38 C.F.R. § 3.304(f) (2017)); *Brown v. Nicholson*, 21 Vet.App. 290, 295 (2007) (considering 38 C.F.R. § 3.309(c) (2006)); *Bonner v. Nicholson*, 19 Vet.App. 188, 190, 194 (2005) (considering 38 C.F.R. § 3.309(e) (2004)); *Williams v. Principi*, 15 Vet.App. 189, 198 (2001) (considering the Agent Orange Act of 1991).

[35] We note that were we writing on a blank slate we might conclude that "law" refers to statutes and "VA issue" refers to a validly promulgated regulation. However, we are not free to ignore binding precedent that has treated "law" to include regulations.

brought about a substantive change in law creating a new and different entitlement to a benefit."[36] We doubt that the term "law" in § 3.114(a) could include more than statutes and regulations because we do not see how other things could create an entitlement to a benefit because they arise neither from the legislative power under Article I of the Constitution (as would a statute) nor through formal rulemaking under the APA (as would a regulation).[37]

Fast Letter 13-04 is neither a statute nor a regulation. Therefore, it does not constitute a "law" for the purposes of establishing entitlement to an earlier effective date pursuant to § 3.114(a). Appellant may therefore succeed here only if Fast Letter 13-04 qualifies as a "VA issue" under § 3.114(a). We turn next to what that term means and then to how our definition applies to the Fast Letter before us.

### B. What is a "VA issue" under § 3.114(a)?

Having determined that a "law" is a statute or regulation, it follows logically that a "VA issue" under § 3.114(a) must be something else. To find otherwise would render the "VA issue" language superfluous, something courts must avoid when interpreting statutes and regulations.[38] The question then becomes what is a "VA issue approved by the Secretary or by the Secretary's direction"? No caselaw from either this Court or the Federal Circuit has addressed this question. As we noted above, we directed the parties to address this question in supplemental briefs. We thank the parties for their helpful responses. The supplemental briefing shows significant agreement between the parties about what constitutes a "VA issue." Of course, we must independently define the regulatory term at issue. We turn to that task now.

We begin by considering the definitions the parties offered. As we said, the parties offer definitions that are similar in many respects. Appellant argues that a "VA issue" means a "directive from or approved by the Secretary and [that] is binding on VA."[39] Similarly, the Secretary defines "VA issue" as "any document issued from VA, its administrations, or other staff offices."[40] Both

---

[36] *Routen*, 142 F.3d at 1441; *see also Foreman*, 29 Vet.App. at 151.

[37] In theory, a self-executing treaty could also provide such an entitlement making it a "law" as well. *See Medellin v. Texas*, 552 U.S. 491, 526-28 (2008). However, we need not resolve this possibility definitively because even if the term "law" was broadened to include a self-executing treaty, it would not undermine the conclusion we reach in this opinion concerning Fast Letter 13-04.

[38] *See Jensen v. Shulkin*¸ 29 Vet.App. 66, 74 (2017) (citing *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006)).

[39] Appellant's Response at 1.

[40] Secretary's Response at 2.

parties assert that VA Fast Letter 13-04 is a "VA issue" under their respective definitions. As we will explain, we agree with appellant's narrower definition of the term "VA issue." However, we disagree with her application of that definition to Fast Letter 13-04 and hold that it does not qualify as a "VA issue" under § 3.114(a).

The Court reviews the interpretation of regulations de novo because interpreting a regulation is a purely legal question.[41] We look first to "the language of the regulation, the plain meaning of which is derived from its text and its structure."[42] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[43] When we assess the meaning of a regulation, we should not read its words in isolation but rather in the context of the regulatory scheme and structure as a whole.[44]

We hold that for the purposes of § 3.114(a), a "VA issue approved by the Secretary or by the Secretary's direction" is (1) a directive from or approved by the Secretary and (2) that is binding on VA. As to the first part of our definition, the regulation itself makes clear that for something to qualify as a "VA issue," the Secretary must have either approved it or directed that the action at issue be taken. The language says so plainly, and we cannot disregard it.[45] We note that this "approval" includes the Secretary's delegation of authority, both generally as to a class of matters as well as for a specific act. Thus, while a directive need not come directly from the Secretary personally, the directive must lie within the scope of his delegation of power.[46] As relevant to this matter, the USB is "delegated authority to act on all matters assigned to the Veterans Benefits Administration [VBA]."[47] So, if the USB issued a directive with respect to the VBA, such a directive could be considered "approved by the Secretary" for purposes of § 3.114(a), based on principles of delegation. We will return to this delegated-power question concerning Fast Letter 13-04 in a moment.

---

[41] *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020).

[42] *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[43] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, __ U.S. ___, ___, 139 S. Ct. 2400, 2415, 204 L. Ed.2d 841 (2019).

[44] *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

[45] *See Tropf*, 20 Vet.App. at 320.

[46] *See* 38 C.F.R. § 2.6 (2020).

[47] 38 C.F.R. § 2.6(b); *see also* VA Gen. Coun. Prec. 3-2012 (Dec. 20, 2012) (noting that under § 2.6(b)(1) "the Secretary has delegated to the [USB] authority to act on all matters assigned to VBA").

The second aspect of our definition of "VA issue" requires that the directive be binding on VA. We reach this conclusion for several reasons. To begin with, as we have just been discussing, the plain language of the regulation already requires secretarial approval. This requirement tells us that a "VA issue" must be a directive from or approved by the highest level of VA – the presidentially appointed and Senate-confirmed Secretary – who has the authority to bind the rest of the Agency. Second, while it is clear that a "VA issue" must be something other than a "law" under § 3.114(a), we think the definition of "law" informs the meaning of "VA issue." A "law" refers to statutes and regulations. By their very nature, these are binding sources of authority on governmental actors and confer enforceable rights on claimants. Reading the regulation as a whole, as we must,[48] it seems to us that a "VA issue" should reflect the same attention to authoritativeness as is apparent from the term "law" in the regulation. So, we hold that a "VA issue" must be binding on the Agency to be subject to the rules of liberalization under § 3.114(a).

We also note that our definition of a "VA issue" generally comports with how the GC applies § 3.114(a) in its opinions when the GC is called on to address § 3.114(a) and its liberalization provisions. To be clear, it is well established that we are not bound by the GC's precedential opinions.[49] Nevertheless, they can be useful as persuasive authority, and here they further support our definition. First, the GC found provisions of the M21-1 were not administrative issues because they are not approved by the Secretary or by the Secretary's direction but rather are "approved by the head of the VA component . . . issuing the manual."[50] Conversely, the GC found that its opinions were administrative issues because they were binding on VA.[51] Finally, the GC also found that a memorandum from the Attorney General issued at the direction of the President to inform Cabinet departments of an important change in the administration's position on a policy question constituted a liberalizing issue.[52] These examples are consistent with our definition of "VA issue" because those directives that come from the Secretary (or the Secretary's equivalent at another agency, such as the Attorney General passing along a directive from the President) and

---

[48] *King*, 26 Vet.App. at 488.

[49] *Hatch v. Principi*, 18 Vet.App. 527, 531 (2004); *Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994).

[50] VA Gen. Coun. Prec. 1-96 (Feb. 17, 1996).

[51] VA Gen. Coun. Prec. 88-90 (Aug. 22, 1990).

[52] VA Gen. Coun. Prec. 3-2014 (June 17, 2014).

bind all of VA are treated as "issues," while those that do not – such as M21 provisions – are not issues.

Having established that a VA issue is a directive that is binding on VA and created at the Secretary's direction or with his approval, we turn now to the facts of appellant's case. Specifically, we address whether Fast Letter 13-04 qualifies as a VA issue such that it requires us to consider whether it is liberalizing under § 3.114(a).

### C. Application of Law to Facts

As discussed above, VA Fast Letter 13-04 is neither a statute nor a regulation, and thus the Fast Letter clearly does not constitute a "law" for the purposes of § 3.114(a). The more difficult question is whether the Fast Letter constitutes a "VA issue" under our definition. Because we hold that Fast Letter 13-04 was neither a directive from the Secretary nor a directive created with his approval, and because we hold the Fast Letter does not bind VA, we hold it is not a "VA issue" under § 3.114(a).

Neither party argues that Fast Letter 13-04 was promulgated at the Secretary's direction and we see no evidence that it was. It was the director of Pension and Fiduciary Services within the VBA who issued Fast Letter 13-04.[53] The question is whether, even though the Secretary did not issue Fast Letter 13-04, it was "approved by the Secretary." As we discussed above, VA regulations allow the Secretary to delegate certain aspects of his authority to others at VA.[54] As relevant to the appeal before us, the Secretary has broadly delegated to the USB the "authority to act on all matters assigned to the [VBA]."[55] We will assume without deciding that this delegation included all the Secretary's power concerning the VBA. That assumption does not lead us to rule in favor of appellant, however, because the director of Pension and Fiduciary Services, not the USB, issued Fast Letter 13-04. So, we must consider whether the USB delegated the authority he received from the Secretary to the director. Under VA's organizational structure, the director of Pension and Fiduciary Services does not report directly to the USB; rather, the director reports to the Principal Undersecretary for Benefits, who, in turn, reports to the USB.[56] Thus, to establish

---

[53] *See* VA Fast Letter 13-04 (Mar. 22, 2013).

[54] *See* 38 C.F.R. § 2.6.

[55] 38 C.F.R. § 2.6(b). The Board of Veterans' Appeals does not fall within the VBA and is not subject to any delegation of authority by the Secretary to the USB but instead is directly responsible to the Secretary. *See* 38 U.S.C. § 7101.

[56] *See* DEP'T OF VETERANS AFFAIRS, 2019 FUNCTIONAL ORGANIZATION MANUAL 21 (Dec. 21, 2018), https://www.va.gov/FOM-5-Final-July-2019.pdf.

that Fast Letter 13-04 was "approved by the Secretary," one would need to demonstrate that the USB's Secretary-delegated authority to issue Fast Letter 13-04 (either as a general class of matters or specifically to this Fast Letter) was conveyed to the Principal Undersecretary for Benefits who then redelegated the authority to the director of Pension and Fiduciary Services. Appellant has pointed to nothing in the law establishing the necessary delegation, nor has she provided any factual evidence of this multilink chain of delegation illustrating Fast Letter 13-04 was issued with the Secretary's approval. This failure alone dooms appellant's argument.

But even if there were evidence of legal authority to the effect that the director of Pensions and Fiduciary Services issued Fast Letter 13-04 with the Secretary's approval, the Fast Letter is still not a "VA issue" because it is not binding on the Agency. The text of Fast Letter 13-04 provides no indication that it was intended to bind anyone other than "[a]ll Pension Management Center and Veterans Service Center [p]ersonnel" to whom it was directed.[57] Thus, it appears that the director of Pension and Fiduciary Services did not even seek to bind all the VBA, much less the rest of VA. And one wonders how the director could bind other parts of the Agency even if he attempted to do so. Fast Letter 13-04 on its face instructed certain adjudicators within the VBA, namely those who dealt with pensions and fiduciary matters, to act in a certain matter. Fast Letter 13-04 was clearly a significant document, but it was limited in scope.

In addition, unlike the matters discussed above that the GC determined to be VA issues – a directive from the Attorney General and a GC opinion, for example – Fast Letter 13-04 did not purport to bind the Board. Again, we do not see how the director of Pensions and Fiduciary Services could bind the Board, an entity that, among other things, reviews actions of that Service. That letter simply lacks the indicia of the authoritativeness necessary under § 3.114(a) to be subject to the liberalizing analysis. Of course, we do not hold that the Fast Letter is entirely irrelevant to the Board. A deviation from the guidance in a Fast Letter *could* require the Board to discuss why it deviated from rules applicable to the adjudicators it was reviewing.[58] But the Board is not *bound* to follow Fast Letter 13-04. "In consideration of appeals and in its decisions, the Board is bound by applicable statutes, regulations of [VA], and precedent opinions of the [GC] of [VA]. The Board

---

[57] VA Gen. Coun. Prec. 3-2014 (June 17, 2014).

[58] *See Overton v. Wilkie*, 30 Vet.App. 257, 264 (2018) (holding that the Board was required to discuss relevant provisions of the M21-1 as part of its duty to provide adequate reasons or bases).

is not bound by Department manuals, circulars, or similar administrative issues."[59] Fast Letter 13-04 is not a statute, regulation, or GC opinion and thus is not binding on the Board. In sum, because it does not bind the Agency, Fast Letter 13-04 cannot constitute a "VA issue" for the purposes of § 3.114(a).

We pause to address one final point about certain Federal Circuit decisions concerning APA review that the parties discussed in their briefs. These decisions do not counsel a result different than that we reach today. On several occasions, the Federal Circuit has considered its jurisdiction to consider challenges to M21-1 provisions and Fast Letters under the APA.[60] Each of these cases presented to the Federal Circuit the legal question whether certain VA administrative actions fell within the limited category of agency action subject to direct challenge before the Federal Circuit, rather than in the course of an individual adjudication.[61] For example, in *Military Order of the Purple Heart*, the Federal Circuit addressed whether a VA Fast Letter constituted a "rule" under the APA such that it was subject to a direct pre-adjudication challenge.[62] A "rule" under the APA is defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."[63] The Federal Circuit held that a VA Fast Letter was a "rule" under the APA.[64] But notice that the inquiry in that case, along with the questions raised in *Gray*, *DAV*, and *NOVA* concerning the propriety of challenging M21-1 provisions directly before the Federal Circuit, is entirely distinct from the inquiry we face today concerning § 3.114(a).[65] Though the questions of what constitutes a "VA issue" under § 3.114(a) and what constitutes a "rule" under the APA could have some overlap –

---

[59] 38 C.F.R. § 20.105 (2020).

[60] *See Gray v. Sec'y of Veterans Affairs*, 875 F.3d 1102 (Fed. Cir. 2017); *Disabled Am. Veterans (DAV) v. Sec'y of Veterans Affairs*, 859 F.3d 102 (Fed. Cir. 2017); *Mil. Ord. of the Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293 (Fed. Cir. 2009); *see also Nat'l Org. of Veterans' Advocates, Inc. (NOVA) v. Sec'y of Veterans Affairs*, ___ F.3d ___, No. 2020-1321, slip op. 27 (Fed. Cir. Dec. 8, 2020) (overruling *DAV* and *Gray* and holding that M21 provisions may, under certain circumstances, be reviewable under the APA).

[61] *See* 38 U.S.C. § 502.

[62] *Mil. Ord. of the Purple Heart*, 580 F.3d at 1293.

[63] 5 U.S.C. § 551(4).

[64] *Mil. Ord. of the Purple Heart*, 580 F.3d at 1296.

[65] As noted above, in *NOVA*, the Federal Circuit, sitting en banc, overruled its decisions in *DAV* and *Gray* on APA grounds. However, the court continued to acknowledge that M21 provisions were not binding on the Board. *See NOVA*, ___ F.3d. at ___, slip op. at 23-24.

for example, both questions consider the binding nature of an agency action – the questions are not the same. Just as we have no occasion to address today whether VA Fast Letter 13-04 is a "rule" under the APA, the Federal Circuit did not speak to whether a Fast Letter or M21-1 provision constituted a "VA issue" under § 3.114(a). The questions before the Federal Circuit and the one before us today are simply different, and our definition of "VA issue" under § 3.114(a) does not conflict with the Federal Circuit's determination that a VA Fast Letter is a "rule" under the APA.

### D. *Summary*

We hold that VA Fast Letter 13-04 does not constitute a "law" or "VA issue approved by the Secretary or by the Secretary's direction" under 38 C.F.R. § 3.114(a). Given that holding, we need not (and do not) address whether Fast Letter 13-04 was "liberalizing."[66] Because VA Fast Letter 13-04 does not qualify as a law or VA issue, the Board did not err in denying an effective date earlier than July 7, 2015, for the award of DIC benefits. Appellant does not raise any other argument as to error in the Board's decision. Thus, we will affirm.

### IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court AFFIRMS the November 1, 2018, Board decision.

---

[66] We note again that we have no need to address what test is appropriate for determining how to determine whether a VA issue is "liberalizing." Here, our inquiry ends with the determination that VA Fast Letter 13-04 is not a VA issue, and questions about what it means for an issue to be liberalizing we leave for another day.